## BALTIMORE AND OHIO RAIL ROAD COMPANY vs. HORACE RESLEY and JAMES RESLEY.

A contractor agreed to build a section of a railroad by a written contract, which stipulated that four-fifths of the monthly estimates should be paid to him during the progress of the work, and the balance on the completion of the contract, and that the monthly and final estimates made by the local engineer should be conclusive between the parties, unless modified by the chief engineer, in which event his estimate was to be conclusive. After part of the work was done under this contract a parol modification of it was made, by which the estimates were to be paid the contractor according to his expenses until the work was completed, the understanding being that he was not to lose his twenty per cent. on the work already done, and was to be protected from further loss, and, save in these particulars, the contract was to stand as it was; his expenses were to be the monthly estimates. HELD:

1st. That by the contract as modified a final estimate was to be made, after the whole was completed, of the work done *prior* to the new arrangement, and paid for according to contract prices, and the work done *after* was to be paid for according to *its actual cost*, to be ascertained by the monthly account of expenses.

2nd. The fact that these monthly estimates ascertained the quantity and kind of work, but did not give the calculation of the value in columns of dollars and cents, is no objection to them; they are a substantial compliance with the requisitions of the contract.

3rd. The measure of damages for work done *after* the new arrangement was its *actual cost*, and a prayer which asserts that the measure of damages for *such* work is the rates fixed by the original contract, is erroneous.

4th. For all work done after the new arrangement the contractor was to be indemnified *his expenses*, no matter what the *measurement* of such work was.

5th. The company having released the contractor, by *consent*, from the completion of the work under the contract, he can sue in *assumpsit* for the work done.

If a prayer is defective in any particular, it is properly rejected.

A prayer that if the jury find that the plaintiffs performed the work "under *the contract* offered in evidence by the defendant," *assumes* the existence and execution of the contract, and is for this reason defective.

A contract provided that the balance due on it should be paid to the contractor, "*upon* his giving a release under seal" to the company. HELD, that the tender of this release is not a *condition precedent*, but an act to be done simultaneously with the payment of the money.

The interpretation of a contract is a question of law, and a prayer which submits this to the jury is for this reason defective.

Balto. & Ohio Rail Road Co. *vs.* Resley.

APPEAL from the Circuit Court for Allegany county.

*Assumpsit* by the appellees against the appellant, to recover for excavating and constructing the 21st section of the Baltimore and Ohio Rail Road west of Cumberland. The counts in the declaration chiefly relied on were for *work and labor*, and *money paid, laid out and expended.* There were also two counts for refusing and neglecting to repair a bridge over the Potomac river which the defendant had erected, and which the *nar* alleges it agreed to keep in repair for the convenience of the plaintiffs in hauling dirt for the embankments, &c. Pleas, "*non assumpsit*" and "*payment.*"

*1st Exception.* When the case was first called for trial, on the 18th of April, the defendant being about to file an affidavit for a continuance for the want of a material witness, it was, by order of court, and consent of the parties and the bar, set down for trial on the 28th of that month. By a rule of court cases were required to be tried or continued when called, but it provided that a case may be taken up out of its order by consent of the bar. By another rule the appeal docket was required to be taken up on the third Tuesday of each term and proceeded with until disposed of, giving preference, however, to criminal cases when ready. In accordance with this rule the appeal docket was taken up and proceeded with until a criminal case intervened on the 27th, which occupied all of that day and the 28th. On the 29th, the defendant objected to proceeding to trial on that day, there being cases on the appeal docket undisposed of and ready for trial, and because it had permitted a material witness to leave whose return was expected on the night of that day, and that it could not go to trial with safety for the want of this witness; and moved the court not to go into the trial of this case on this day, but to postpone it until it is reached in its regular term on the trial docket, it being the first case on that docket when it should be again taken up. This motion the court, (PERRY, J.,) overruled, and ordered the trial to proceed, and to this ruling the defendant excepted.

*2nd Exception.* The plaintiffs then offered certain testimony

taken under a commission. The defendant requested the court to examine this testimony, and objected to any part of it being read to the jury, unless the plaintiffs offered in evidence the written agreement of which the witnesses spoke, it being admitted that the defendant had given the plaintiff notice to produce it. On the reception of this notice the plaintiffs' counsel immediately tendered to the counsel for the defendant the paper therein referred to, but declined to offer it in evidence. The court overruled the objection, and ruled that the testimony might be read without offering in evidence the agreement. To this ruling the defendant excepted.

*3rd Exception.* The defendant then objected to the admissibility of the answers of one of the witnesses, whose testimony was embraced in this commission, to certain interrogatories, but afterwards withdrew the objection. The plaintiffs thereupon offered to withdraw the answers to these interrogatories before they were read. The defendant then objected to the withdrawal of them, so far as they tend to prove the existence of a written agreement between the plaintiffs and defendant for the completion of the said section of the railroad. The court overruled this objection and permitted the plaintiffs to withdraw said answers, and to this ruling the defendant excepted.

*4th Exception.* The plaintiffs then read the testimony, excepting the answers, which were withdrawn. The defendant then offered and read in evidence certain portions of these withdrawn answers relating to the existence of a written agreement between the plaintiffs and the defendant. The plaintiffs then offered to prove by Dayton, a competent witness, the nature, character and value of the work done by the plaintiffs on said section. To the admissibility of this evidence the defendant objected, unless the plaintiffs first offered in evidence the written contract aforesaid. The court overruled this objection and permitted the testimony to go to the jury, and to this ruling the defendant excepted.

*5th Exception.* After the testimony of Dayton, and other witnesses to the same point, had been offered by the plaintiffs,

the defendant proved the execution of the contract referred to, dated the 6th of July 1850, and then offered it in evidence. (The clauses and purport of this contract are sufficiently stated in the opinion of this court.) The defendant then further offered in evidence the monthly and final estimates made by the local or resident engineers, and various receipts of the plaintiffs for money paid them on account of their contract. These estimates consisted of the number of cubic yards of rock, earth, &c., but the calculation of the value according to the contract prices was not made and carried into columns of dollars and cents. The defendant then further proved by Small, one of its engineers, that on or about the 20th of March 1851, a parol modification of this contract was made, the terms of which are sufficiently stated in the opinion of this court. The defendant then asked instructions to the jury, in substance as follows:

2nd. That if the jury find from the evidence that the plaintiffs performed the work on said section prior to the 20th of March 1851, under the contract offered in evidence by the defendant, and that monthly estimates of the quantity, character and value of the work done during the month or since the last monthly estimate, were made by the local engineers, in accordance with the provisions of the contract, *bona fide,* and that the plaintiffs received the four-fifths of said monthly estimates, as provided for in the contract, then each of said estimates is an adjustment of the work done up to the time it was made, and is conclusive between the parties, unless the chief engineer deemed it proper to revise and alter them, in which event his estimate would be final and conclusive between the parties, in the absence of all fraud on the part of the defendant or its engineer or engineers.

3rd. If the jury find that the plaintiffs did the work under the contract, and that said contract was executed by them up to the 20th of March 1851, and that at that time it was agreed by the parties, that instead of the monthly estimates, as provided for by the contract, they should be paid their expenses for the work done during the month, and that the actual

expenses were returned and paid by the defendant under said agreement instead of the monthly estimates, then each payment of said monthly expenses is an adjustment of the work done up to the time it was made, and is final and conclusive in the absence of all fraud on the part of the defendant, and the plaintiffs cannot now go behind said adjustments to recover for work and labor done.

4th. If the jury find that the plaintiffs did the work up to the 20th of March 1851, under the provisions of the contract, and that they entered into said agreement as offered in evidence by the defendant, and that monthly estimates were made by the resident or local engineers in accordance with the provisions of the contract, *bona fide*, and that the plaintiffs received the four-fifths of said monthly estimates; and that at or about that time it was mutually agreed between the parties, that the plaintiffs should go on with the work and should be paid their expenses, instead of the monthly estimates as provided for by the contract until the work was completed, that then it should be finally measured up, and if there should appear to be any thing due the plaintiffs over what they had already received for the work done before that time it should be paid them; that they were not to lose that part of the twenty per cent. for work then done which remained in the hands of the defendant, that they were to be protected from all further loss on the section, that their expenses were to be the monthly estimates, and that the contract, save in these particulars, was to stand as it was; and if they further find that the plaintiffs' expenses were so returned as the monthly estimates, and exceeded what the estimate would have been under the contract at the contract prices, and paid by the defendant and received by the plaintiffs as such, then each of said monthly estimates so paid, both before and after the 20th of March 1851, is an adjustment of the work done, and the plaintiffs are concluded by these settlements, and by reason of their being closed as separate and distinct portions of the contract, that the plaintiffs cannot open them again to prove and recover the actual value of their work, and that they are effectually

barred by adopting the adjustment and receiving payments under them, in the absence of all fraud on the part of the defendant, or its engineer or engineers.

5th. That if the contract was entered into by the parties, and remained unaltered and unrescinded, except as stated in the fourth prayer, up to the 19th of August 1851; that at that time the plaintiffs had not finished the work, but that it was then agreed the work should pass over to the defendant, and that the plaintiffs should retire from it in the state it then was, and that at that time the local or resident engineer having charge of the work for the time being, made a final estimate of the quantity, character and value of the said work, agreeably to the terms of the said agreement, and the modification thereof *bona fide*, the said final estimate is conclusive between the parties, unless the chief engineer deem it proper at any time to revise and alter the same, in which event the estimate of the said chief engineer is conclusive between the parties, in the absence of all fraud on the part of the defendant and its engineer or engineers.

6th. If the jury find as stated in the fourth prayer, the plaintiffs are only entitled to recover that portion, if any, of the twenty per cent. remaining in the hands of the defendant for work done prior to the 20th of March 1851, and that portion of the work not embraced in the monthly estimates prior to the 20th of March 1851, nor in the monthly expenses or estimates after that time, if any, and that the measure of damages for any such work would be the contract price contained in the contract for work of a similar character.

7th. If the jury find as stated in the fourth prayer, the plaintiffs are not at liberty to establish, by any other evidence than that prescribed in the contract and as the same was modified, the quantity, character and value of the work done, unless they had, after proper exertions on their part, made an ineffectual attempt to procure it; that it was their duty to have applied to the engineer to make the measurements before any other evidence would have been admissible as a substitute for such proof, and that all their testimony of the quantity, &c., of the

work done by them under the contract is inadmissible, unless they applied to the engineer, whose duty it was, under the contract, to make the measurements, and failed to procure them.

8th. If the use of the trussel bridge was part of the plan for executing the work, the defendant, by its engineer, had power, by the contract, to alter said plan; but if, by such change, the work was made more expensive to the plaintiffs, they are entitled to such allowance as the engineer, in his own judgment, may consider just.

9th. If the jury find as stated in the fourth and fifth prayers, the plaintiffs cannot recover in general *assumpsit* and under the declaration in this case, but must proceed upon the special contract and declare specially, unless they find that the work specified in the contract was performed and completed by the plaintiffs.

10th. That the plaintiffs are not entitled to recover for any balance due them under the ballast contract of the 16th of November 1850, unless the jury find that the plaintiffs first tendered to defendant a release, in writing, under seal, releasing the defendant from all claim or demands growing in any manner out of said agreement. (The provisions of this contract are sufficiently stated in the opinion of this court.)

11th. This prayer, after embodying, in substance, the fourth prayer, proceeds: If the jury shall believe as aforesaid, except that the final estimate was not made in accordance with the provisions of the contract and the modifications as aforesaid, owing to gross negligence or for the want of proper measurements, or any other cause, the plaintiffs are not at liberty to establish, by any other evidence than that prescribed in the contract and as the same was modified, the quantity, character and value of the work done, unless they find that the plaintiffs, after proper exertions on their part, had made an ineffectual attempt to procure it, as stated in the seventh prayer.

All these prayers the court refused, and to this ruling the defendant excepted; and the verdict and judgment being in favor of the plaintiffs for $4950.50, the defendant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*Thos. J. McKaig* for the appellant, argued the following points:

1st. That the court not having taken the case up on the day assigned for it, could not, by its rules, force the defendant into trial on a subsequent day, the case then not having been reached in its regular turn on the docket. 2 *H. & G.*, 79, *Wall vs. Wall.* 6 *H. & J.*, 272, *Benson vs. Davis.* 11 *G. & J.*, 92, *Dunbar vs. Conway.* The ruling in the second exception was also erroneous, because whenever it comes to the knowledge of the court that *better* evidence exists than that offered, the offered evidence will be excluded until the better is produced. 1 *Greenlf. on Ev.*, sec. 84, *note* 2.

2nd. The plaintiffs having offered the testimony of Worthington, which proved the existence of the contract, and having produced the contract but declined to offer it in evidence, could not be permitted to withdraw the evidence which proved the existence of the contract to enable them to offer parol testimony of the nature, character and value of the work. 1 *Pet.*, *C. C. Rep.*, 86, *Gilpins vs. Consequa.* 1 *Stew.*, 394, *Cloud vs. Patterson.* 9 *Wheat.*, 558, *Sebree vs. Dorr.* 1 *Pick.*, 375, *Commonwealth vs. James.* 4 *Mass.*, 646, *Commonwealth vs. Kinison.* 3 *Md. Rep.*, 158, *Gaither vs. Martin.*

3rd. That the work done under the contract, up to the 20th March 1851, having been regularly estimated monthly by the proper officer, as provided by the contract, and four-fifths of the monthly estimates having been received by the plaintiffs, each of those estimates was an adjustment of the work done under the contract and final between the parties. *Wilson vs. York & Md. Line Rail Road Co.*, 11 *G. & J.*, 58. *Rodemer vs. Hazlehurst & Co.*, 9 *Gill*, 288.

4th. That if the contract was altered in no respect save as stated in the testimony of Mr. Small; that the plaintiffs were to be paid their expenses and not to lose the twenty per cent. then back, and if they were so paid their expenses, amounting to more than the work done would have amounted to at con-

tract prices, and received it under the modified agreement, they cannot now be permitted, in the absence of fraud or mistake, to recover for work and labor done. 9 *Gill,* 288.

5th. That the final estimate, as stated in defendant's fifth prayer, was final and conclusive on all the parties to the contract, and that there was nothing which the final estimate could operate upon, save the twenty per cent. in the hands of the company, prior to the 20th March 1851, and portions not in monthly expenses and monthly estimates, if any, as stated in defendant's sixth prayer. 9 *Gill,* 288.

6th. That the defendant's proposition, contained in the seventh prayer, ought to have been granted. 11 *G. & J.,* 58. *United States vs. Robeson,* 9 *Pet.,* 319. *Manuscript Opinion of Chief Justice Taney,* in the case of *Paxton, Craighead & Gailbreath, vs. Baltimore & Ohio Rail Road Co.,* in the circuit court at Baltimore. *Elmendorf vs. Harris,* 5 *Wend.,* 518, 521, 522. *Garr vs. Gomez,* 9 *Wend.,* 649, 661.

7th. That under the contract, the plaintiffs could not recover the reserved per centage without first tendering the release under seal, as provided for in the contract.

8th. That by the contract of the 6th of July 1850, the defendant had the right to change the mode and manner of executing the contract; and if, by such change, the work was made more expensive to the plaintiffs, they were entitled only to such compensation as the engineer should allow them, provided he acted *bona fide.*

9th. That the plaintiffs could not resort to any other mode of ascertaining the quantity, quality and value of the work done by them, save in the mode pointed out by the contract.

*Thomas Devecmon* and *Geo. A. Pearre* for the appellees, argued:

On the *first exception:*—That the court were right in directing the case to proceed, because, by consent of both parties and of the bar, it was set for the 28th, and this agreement set aside the rules, *pro hac vice.* The criminal case commenced on the 27th, lasted through the 28th, and then this case came up as unfinished business of the 28th. The reason for the motion is,

that the defendant permitted its witness to go on the 28th, which it had no right to do upon conjecture. Besides, the witness returned in time, was examined, and as the defendant was not damaged by the act of the court, there will be no reversal on that account. 3 *G. & J.*, 450, *Bosley vs. Chesapeake Ins. Co.* 9 *Do.*, 439, *Union Bank vs. Planters Bank.* 5 *Pet.*, 131, *Greenleaf vs. Birth.*

On the *second exception:*—1st, that as at *this time* no written contract was in evidence, the court could not know that the testimony offered would vary, contradict or change it. 2nd. The testimony is not of the *terms* of a written contract. The rule of law is only to exclude parol testimony of the language of the written contract. 1 *Greenlf. on Ev.*, secs. 277, 304. 5 *Md. Rep.*, 131, *Coates & Glenn, vs. Sangston.* 3rd. But he subsequently withdrew his objection, and therefore there can be no reversal for the previous ruling. 4th. If any part of the testimony was admissible, the court were right in overruling the objection which was to the testimony *in mass.* 1 *Md. Rep.*, 474, *Waters vs. Dashiell.* 3 *Do.*, 146, *Gaither vs. Martin.*

On the *third exception:*—that a party who has taken testimony under a commission, may offer as much of it as he chooses, or as little. These answers related to the bridges, the land, and the time mentioned in the contract. By withdrawing the offer of them, the plaintiffs only declined to offer testimony on these particular subjects.

On the *fourth exception:*—1st. It violated no principle of law to prove what work was done. Such testimony did not vary or explain the contract. We had a right, whether the contract was offered or not, to prove our work; indeed, we were bound to do it. The order in which our testimony was to be offered the court will not control. 9 *G. & J.*, 476, *Caton vs. Carter.* 2nd. The evidence of Worthington offered does not say a word in contradiction of the written contract, even if the contract had then been in evidence.

On the *fifth exception:*—We object to the *second prayer:*— 1st. That it assumes the existence of the contract without leaving the fact of its execution by the parties to the jury. 3

*Md. Rep.*, 160, 161. This same objection applies to the third, fourth, sixth and seventh prayers. 2nd. There is no evidence from which the jury could find that monthly estimates were made according to the contract; the estimates offered do not contain the *value* of the work, as by the contract was stipulated. This objection applies also to the third, fourth, sixth, eighth and eleventh prayers. 3rd. The new contract provided for a final measurement to ascertain the work done to March 1851, which superseded the monthly, and they were no longer binding. Even if no new contract had been made, a final estimate by the written contract is binding, and supersedes the monthly, which are then no longer binding.

To the *third prayer* we object, in addition:—1st. That by the new agreement, the expenses of the plaintiffs were not substituted *merely* in the place of the monthly estimates, and that the new contract did not give to the engineer's estimate of expenses the binding effect of the monthly estimates under the written contract. There being no such clause in the new contract, *such* a construction so penal upon the plaintiffs will not be given. By the written contract, the measurement and judgment of the engineer were to be exercised in ascertaining *quantities* and *character* of work. Expenses cannot be so ascertained. The plaintiffs' expenses could only be known to themselves. The prayer must be decided by the contract, as stated in the prayer, which is, that if the jury shall believe it was agreed, that instead of the monthly estimates, provided for by the contract to be made by the local or resident engineers having charge of the work for the time being, of the quantity, character and value of the work done during the month, or since the last monthly estimate, *that they should be paid their expenses for the work done during the month;* and if the jury shall believe that the actual expenses were returned and paid by the defendant under the said agreement. The *contract* here recited contains nothing to show that the plaintiffs agreed that the payment of the monthly expenses were to be conclusive on them. It is not even said, that if the jury shall believe that the actual expenses were returned "*by the engineers,*" but it is, "returned and paid by the defendants." 2nd. There

is not a particle of evidence that these expenses were judged of by the engineers. 3rd. The return of expenses is no adjustment of the "*work done.*" The work done after March 1851 was not to be adjusted or bind any body—the thing to be fixed was the expenses. The recovery here was not by yard but by expenses. 4th. Even if the expenses were returned by the engineers, the prayer should have said, if the plaintiffs had notice of their being taken. 11 *G. & J.,* 74, *Wilson vs. York & Md. Line Rail Road Co.*

To the *fourth prayer* we say:—1st, that there is no evidence of proper monthly estimates prior to March 1851. 2nd, it assumes the contract to be binding if entered into by the plaintiffs. 3rd. That the new arrangement, as stated in the prayer, did not empower the engineer to ascertain and return the expenses, and that they should be conclusive. 4th. The prayer does not even bind the engineer to *ascertain* or judge of them, but merely to return them. 5th. There is no evidence that they were ascertained by him. 6th. In addition, the plaintiffs were entitled to notice, and this should have been embodied in the prayer, because it was a requisite to make the estimate binding. 11 *G. & J.,* 77.

To the *fifth prayer* we object:—1st, that by it a question of law is submitted to the jury, viz., how far the new verbal agreement altered or rescinded the operation of the first contract, which is a question of *law*. 2nd. It contemplates that the engineer was to make a final estimate, as provided in the written contract, viz., measure the whole work and apply the contract prices to the whole. This is wrong, because for the work done after March 1851, the plaintiffs were not to receive the contract prices. They were to get their expenses, let the measurement be what it might. If it does not mean this it means nothing, because the only evidence of a final estimate is the one made in that way—putting contract prices to all the work. The new contract only contemplated a measurement by the engineer to ascertain the work done before March 1851. 3rd. It should have embodied the idea of notice when the final estimate of expenses was to be taken, but the contract contemplated no final estimate in the original sense. 4th. If this

prayer had been granted, the jury would have been bound to find the whole credits the plaintiffs were entitled to was $37,614.37, without regard to the fact, whether the work done before March at contract prices, and the expenses since, amounted to that sum or more.

The *sixth prayer*, besides being liable to the objections urged against the preceding ones, assumes an erroneous measure of damages, because it would make the contract prices the measure of damages, not only for work done prior to March 1851, but for work done after the new arrangement and not embraced in the monthly estimates, when, as to these last, it should have been the expense of doing it.   In other words, if there was any work done under the new arrangement which was not included in the monthly expenses, we were bound to take the old contract prices and not demand our expenses.

The *seventh prayer* is objectionable, because:—1st. Where estimates are made, the plaintiffs, if they think them erroneous, are not bound to ask the engineers to make others.   In *Wilson vs. The York & Md. Line Rail Road Co.*, no estimate had been made by the proper party.   This prayer assumes that the estimates were all properly made, and yet we must apply to have new ones made.   2nd. It erroneously assumes that there was a rule of evidence prescribed in the new contract, and then leaves this, which is a *question of law*, to the jury.   3rd, it is too narrow; *measurements* were not all, expenses were a part.   4th, by the new contract, the mode of ascertaining the expenses was left open, whereas this prayer assumes that a mode was fixed by the agreement.   5th. Besides, the proof shows that no monthly estimates of expenses was made by the engineer, and it is too late to make them after the work is finished.

The *eighth prayer* is:—1st, a mere abstract proposition, with no evidence to support it.   There is no evidence that the engineer ever exercised his judgment upon the question of increased cost by change of plan.   1 *Gill*, 25, *State vs. Reigart*. 2nd, by the defendant's own theory, the *increased* expense by change of plan in the work done after March 1851 was not to be judged of by the engineer, but the expense of doing

the work, no matter how increased, was to be the guide. 3rd. It should have embodied the principle of notice, for even under the old contract the plaintiffs were entitled to notice upon making the estimate for the increased expenses.

In answer to the *ninth prayer* we say, that the agreement stated in the prayer, in August 1851, that the work should be passed over to the defendant, was a consent by the defendant that the plaintiffs need not perform the contract. We could not sue on the special contract, because we had not performed it. 2 *Smith's Lead. Cases*, 25. The performance of the contract being waived by consent, we could sue in *assumpsit*. 2 *Smith's Lead. Cases*, 26. 9 *Gill*, 294, *Rodemer vs. Hazlehurst.* The payments being divisible at each estimate, we could sue in *assumpsit* even if the contract had stood.

The *tenth prayer* is erroneous, because we say the plaintiffs were not bound to tender a release before suit. 2 *Bos. & Pul.*, 447, *Waterhouse vs. Skinner.* 1 *East.*, 203, *Rawson vs. Johnson.* 7 *Taunt.*, 314, *Levy vs. Herbert. Douglas*, 688, *Jones vs. Barkley.* 2 *Smith's Lead. Cases*, 26. All that we were bound to do was to say, that we were ready to execute the release *upon* payment of the money.

The *eleventh prayer*, 1st, submits a question of law to the jury, viz., the construction of the contract. 2nd, it declares the payment of monthly expenses conclusive, without annexing the condition that they were returned as monthly estimates under the contract. 3rd, it asks the court to say that the final estimate was conclusive, without regard to the mode in which it was made or by whom returned. 4th, it leaves to the jury to guess at what evidence it is that is prescribed in the contract, and then leaves this, which is another question of *law*, to the jury. 5th, it was not our duty, when a final estimate is once made, to run after the engineer and get him to make another.

LE GRAND, C. J., delivered the opinion of this court.

After the introduction of the testimony of the witness Dayton, and that of other witnesses to the same points, the defendants gave in evidence written articles of agreement between the plaintiffs and the defendants, from which it

appeared that it had been agreed upon between the parties, that a particular mode was fixed in which the character and value of the work to be done was to be ascertained. The clauses in the contract applicable to this branch of the case are in these words. After speaking of payments the contract proceeds thus: "The above payments shall be made in the following manner, that is to say, during the progress of the work and until it is completed, there shall be a monthly estimate made by the aforesaid engineer, of the quantity, character and value of the work done during the month, or since the last monthly estimate, four-fifths of which value shall be paid to the said parties of the first part, at such place as the chief engineer may appoint, and when the said work is completed and so accepted by the said chief engineer, there shall be a final estimate made by the engineer of the quantity, character and value of said work, agreeably to the terms of this agreement, when the balance appearing to be due to the said parties of the first part shall be paid to them, upon giving a release under seal to the said company from all claims or demands whatsoever growing in any manner out of this agreement. And it is expressly understood, that the monthly and final estimates of said engineer as to the quantity, character and value of the work done during the month, or since the last monthly estimate, and at the completion of the work shall be conclusive between the parties to this contract, unless the chief engineer may deem it proper at any time to revise and alter, in such manner as he may see fit, the monthly or final estimates of the said engineer, in which event the estimate of the said chief engineer shall be substituted to all intents and purposes in place of the estimate of the said engineer, it being however wholly optional with the said chief engineer to exercise such power of revision or not." The defendant, after giving evidence of the work, estimates, payments, &c., proved by a witness that the contract had been modified. It appears from the evidence of the witness, that the plaintiffs representing that the work on the section was costing them too much, and that they could not go on with it at their contract prices, the

witness, who was one of the engineers in the employ of the defendant, told one of the plaintiffs to go on with the work until he could have a conversation with the chief engineer about it, and that between the time of the conversation and the time when the chief engineer should decide what was to be done, *the expenses* of the plaintiffs *would be paid and that they should lose nothing.* Witness further says: "After the interview with the chief engineer he told Mr. Resley, (being authorized to do so by the chief engineer,) what he said, which was, go on with the work and you shall be paid your estimates *according to your expenses until the work is completed*, then it shall be finally measured up and the quantities returned. If there shall appear to be any thing due you over what you have already received for the work done before this arrangement, it shall be paid to you. *The understanding was that he was not to lose what remained of his twenty per cent. in the hands of the company, on the work done prior to that time, and that he was to be protected from further loss on the work. Save in the particulars now enumerated, the contract was to stand as it was. His expenses were to be the monthly estimates."*

The contract thus modified was this: after the whole work was completed a final estimate of the work done *prior* to the new arrangement was to be made, and paid for, according to the stipulations of the written contract. The work to be done *after* the new arrangement, was to be paid for according to its *actual* cost to the plaintiffs, and this cost was to be ascertained by the monthly account of expenses.

The defendant offered ten prayers, all of which were rejected. They are numbered in the record from number two to number eleven, both inclusive.

To each of these prayers was urged several objections. We do not deem it important that each of them should be considered, for if the prayers be defective in any particular the court did right in rejecting them.

The second and third prayers were defective in assuming the execution of the contract given in evidence of date July

6th, 1850.   It was for the jury to find its existence and proper execution.

We see no defect in the fourth prayer.   It requires the jury to find all the necessary facts to warrant the legal conclusion which it deduces from them.   The objection urged in argument to this prayer was, that the proof did not show the value of the work was properly ascertained; the failure being supposed to exist in the fact that although the quantity and kind of work were given, the calculation was not made and carried into columns in dollars and cents.   This we do not consider an evasion of the requisitions of the contract, but a substantial compliance with them.   We discover also no error in the fifth prayer, and accordingly dissent from the circuit court in regard to the fourth and fifth prayers.

The sixth prayer asserts that the measure of damages for work done subsequently to the 20th March 1851, is the rates fixed by the original contract.   This was clearly wrong, for, according to the new arrangement, the work to be done after it was made was to be paid for according to its *actual* cost. It was the object of the new understanding to effect an alteration in the mode of compensation; in other words, to substitute for the contract prices the *actual expenses* to which the plaintiff should be subjected after the 20th March 1851.

The seventh and eighth prayers proceed in part on the idea, that for the work done an estimate was to be made by *measurement*, whereas by the contract, as modified, no matter what was the measurement, the plaintiffs were to be indemnified their expenses for all work done after the new arrangement had been entered into.   These prayers cover all the work and are not confined to that done prior to the new or modified contract.

The ninth prayer denies the right of the plaintiffs to recover in this form of action, unless the jury should find from the evidence that the work specified in the contract was performed and completed by them.   This was error, because the parties were released by the *consent* of the defendant.   The decision in *Rodemer vs. Hazlehurst & Co.*, 9 *Gill*, 294, is a sufficient answer to this prayer.

40      v.7

The tenth prayer is also erroneous, because it denies the right to recover, unless the jury should find "that the plaintiffs *first* tendered to the said defendant a *release in writing under seal*, releasing the said defendant from all claim or demands growing in any manner out of said agreement." This prayer relates to the contract of date 16th November 1850, which was fully executed. It provides that the balance that may be due on it to the plaintiffs, "shall be paid to them upon their giving a release under a seal" to the company. We do not consider the tender of the release a condition precedent, but as one which was to be performed simultaneously with the payment of the money. This view was fully and clearly held in the case of *Oliver vs. Palmer & Hamilton*, decided at June term 1846, but not reported. In that case the order, which was the subject of interpretation, was in these words:—"Messrs. R. and J. Oliver, You will please pay to Palmer and Hamilton, out of any funds you may have belonging to me, the sum of ten thousand dollars, after deducting all claims and demands you may have against me on any account whatever. On the payment of the above mentioned sum, $10,000, Palmer and Hamilton will deliver to you my two notes in favor of D'Arcy and Didier, for $4263.89, and $4288.19, amount, $8552.08, and relinquish all claims against me.—Lemuel Taylor." In regard to the time when the right of action accrued the court said: "Readiness and willingness to deliver the notes and execute a release, was all that was necessary to entitle the appellees (P. and H.) to sue at any time after funds came to the hands of R. and J. Oliver to pay. The previous execution of a release not necessary, nor an actual tender of notes and release."

The eleventh prayer is defective in this: it submits a question of law to the jury, namely, the interpretation of the contract.

We have avoided saying anything in regard to the other exceptions contained in the record, because the views we have expressed render it unnecessary we should do so.

*Judgment reversed and procedendo awarded.*