# Parker Vein Coal Company vs. Michael P. O'Hern.

A party to a contract cannot, by his own act, prevent another from performing his engagement, and then complain that such other party has not kept its stipulations.

Where a party himself voluntarily purchases at trustee's sale land which another party had agreed to purchase at said sale and convey to him, such purchase, even with the consent of the other party, in the absence of any qualification of its legal effect, operates in equity as a waiver of the agreement.

Appeal from the Equity Side of the Circuit Court for Allegany county.

The bill in this case was filed for the sale of a tract of land called "*Timothy Level*," three-fifths of which belonged to the appellee, O'Hern, and the other two-fifths to parties claiming under Samuel Jackson. Pending this proceeding and before a decree for the sale, O'Hern and Otis P. Jewett, the agent for the Parker Vein Coal Company, entered into the following agreement:

"Agreement, made this 10th day of December, A. D., 1852, between Michael P. O'Hern, of Cumberland, Allegany county, in the State of Maryland, and Otis P. Jewett, of the city, county and State of New York:

"The said Michael P. O'Hern, for the consideration hereinafter expressed, agrees to sell to the said Otis P. Jewett, his executors or assigns, all that certain tract or piece of land called '*Timothy Level*,' patent and commonly known by the name of the Jackson Property, containing two hundred and thirty-six acres and three-fourths of an acre of land, lying and being in Allegany county and State of Maryland. And the said Michael P. O'Hern, for himself, his heirs, executors and administrators, covenants and agrees with the said Otis P. Jewett, his heirs and assigns, to execute and deliver to said Jewett, his heirs or assigns, a good and sufficient deed or conveyance of said property as soon as practicable after the sale of a certain undivided two-fifths part thereof, under and by virtue of a proceeding now pending in Allegany court, or as soon as said O'Hern shall

perfect a title to said two-fifths, should he be able to do so previous to said sale. And the said Otis P. Jewett binds himself, his heirs and assigns, to pay to the said Michael P. O'Hern, his heirs or assigns, the sum of $50,000 for the said premises, in manner following: $6000 within twenty days from the 30th of November 1852; $6000 within six months after the expiration of the twenty days aforesaid; $6000 within twelve months from the day of the payment of the last mentioned $6000; $5000 by an acceptance, payable in sixty days from the date of these presents at the Bank of North America, New York city; $15,000 by a bond and mortgage on said premises, payable in two years after date, with interest at six per cent., payable semi-annually, to be delivered to said O'Hern on the delivery of the deed for said premises.

"And whereas, the said O'Hern has not yet perfected his title to the undivided two-fifths of the said premises, but expects shortly to do so, as before mentioned, the remaining sum of $12,000, part of the said $50,000, shall be paid to the said O'Hern in the same manner, as to time and amounts, as he himself shall be obliged to make payment for said two-fifths, so far as the amount he shall pay therefor is concerned; and the difference between what he shall pay for said two-fifths and the said $12,000, shall be paid to said O'Hern on delivery of the deed for said premises or in a mortgage on said premises, at the option of said O'Hern.

"It is hereby mutually understood and agreed, that the property herein above described is to be transferred and conveyed to the Parker Vein Coal and Caledonia Coal Companies by said Jewett.

"In witness whereof, the parties to these presents have hereunto set their hands and seals, the day and year first above written.                    M. P. O'HERN,     (Seal.)
                                             OTIS P. JEWETT,   (Seal.)"

This agreement was subsequently assigned with all its conditions to the Parker Vein Coal Company by Jewett, with O'Hern's assent, and accepted by the company, who agreed to perform all the conditions in it.

The decree for the sale then passed, and at the sale, by an

agreement between the attorney and agent of the company and O'Hern, the company became the purchaser of the whole tract for $71,309.37. The company then paid to O'Hern all the payments under their agreement except the $15,000, and then filed a petition in which they insist, that O'Hern having failed to perfect his title and they having been compelled to purchase said two-fifths at a price more than $15,000 above the $50,000 for which O'Hern had agreed to convey the whole property, he is not entitled to said $15,000, and pray the court to direct the whole amount to be audited to them.

O'Hern, by his answer, contends, that by the agreement, the company were to pay the $15,000 for the three-fifths in any event, and claims that this sum shall be audited to him or his assigns.

The court below (PERRY, J.,) decided, that according to the true construction of said agreement, O'Hern, or his assigns, were entitled to the $15,000, and directed the auditor to state an account accordingly. From this order the company appealed.

The cause was argued before LE GRAND, C. J., TUCK and MASON, J.

*J. Dixon Roman* for the appellants, argued:

1st. That O'Hern agreed to convey the whole property for $50,000, and having failed to perform this agreement, he cannot ask a court of equity to give him the purchase money at least without *doing equity*, by allowing the purchasers to retain the excess which they were obliged to pay.

2nd. That the purchase of the property by the appellants was at the request or at least with the consent of O'Hern, which precludes him from objecting on that ground.

*Wm. Price* for the appellee, argued:

1st. That there was no covenant on the part of O'Hern to convey to the company two undivided fifth parts of the tract called "*Timothy Level.*"

2nd. That if they ever had such a covenant, they have re-

leased or waived it by purchasing the land themselves at the trustee's sale, and thus preventing O'Hern from acquiring the title as contemplated by the agreement. *Chitty on Cont.*, 738, 739. 9 *Gill*, 294, *Rodemer vs. Hazlehurst*.

3rd. If they had such a covenant and have not waived it, they have suffered no damage.

4th. If they had such a covenant and had sustained damage which they have not waived, they must bring their action to have their damages assessed by a jury.

5th. O'Hern is entitled, upon every view of the case, to have the money paid over to him, and to his costs.

TUCK, J., delivered the opinion of this court.

A proceeding in equity was pending for the sale of a tract of land called "*Timothy Level*," of which the appellee, O'Hern, owned three-fifths, the residue belonging to persons claiming under Samuel Jackson. On the 10th of December 1852, before a decree was passed, O'Hern, and Jewett the agent of the appellants, entered into the agreement set out in the record, which was afterwards assigned by Jewett to the company and by them accepted, with O'Hern's consent, subject to all its terms and conditions. A decree was passed for a sale and distribution of the proceeds, on the 26th of April 1853, and a sale made on the 30th of June of that year. At this sale, as appears by the petition of the appellants and the answer of O'Hern, the whole property was purchased by the agent of the appellants, under an arrangement between him and O'Hern, by which the appellants became owners of the property at $71,309.37, being much more than they had agreed to pay O'Hern for it. All the payments have been made except the last instalment of $15,000. The company now insists, that O'Hern having failed to perfect his title to the whole property, and they having been compelled to purchase the two-fifths, which he had agreed to procure and convey to them, at a price much above the sum they had agreed to pay, he is answerable for such non-compliance with his contract; and they claim to be compensated by having the sum of $15,000 audited by them, instead of O'Hern or his assignees.

The parties to the agreement contemplated the purchase of the whole land by O'Hern at the trustee's sale and the possibility of his buying the outstanding two-fifths before that time, but it is not clear by any means that they expected O'Hern to lose what these shares might cost over and above the rate at which he had sold the others; on the contrary, it would seem that if he succeeded in buying these shares, even at a greater rate, the excess over the $12,000 retained by the company was to be paid by them. Under this view of the contract, the company are not in any worse position, as vendees of the trustee, than they would have occupied if O'Hern had bought and conveyed to them. But we deem it unnecessary to place a construction on this part of the instrument, because we take it to be very clear, that a party cannot by his own act prevent another from performing his engagement and then complain that he has not kept its stipulations. *Rodemer vs. Hazlehurst,* 9 *Gill,* 288. *Rail Road Co. vs. Resley,* 7 *Md. Rep.,* 313. If this contract contained an agreement to purchase and convey the outstanding shares, as contended by the appellants, the purchase by them at the trustee's sale, even with O'Hern's consent, in the absence of any qualification of the legal effect of that act, operated in equity as a waiver. There is nothing here to show that the company was under any necessity or compulsion to buy the land. It was their voluntary act, under an arrangement with O'Hern, and he may well object to their ascribing to it an effect which does not appear to have been contemplated by him or them at the time.

Not perceiving that the appellants have any cause of complaint against the action of the court below, its order will be affirmed.

*Order affirmed, with costs.*