## ALLEN ENGINEERING CORPORATION
### *v.* LATTIMORE

[No. 277, September Term, 1963.]

*Decided June 8, 1964.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

*James R. Miller, Jr.,* and *Earl C. Hill, Jr.,* with whom were *Miller, Miller & Canby* on the brief, for the appellant.

*E. Richard McIntyre,* with whom were *Kardy, Brannan & Neumann* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal from a judgment in favor of the plaintiff-appellee, Lattimore, a cement contractor, against the defendant-appellant, Allen Engineering Company (Allen), a builder. The action was brought by Lattimore against Allen for damages for breach of a building contract. The defendant's motion for a directed verdict renewed at the end of the testimony was overruled and the jury returned a verdict in favor of Lattimore for $3,000 as damages. Judgment was entered for that amount, plus interest from the date of the verdict and costs.

The appellant contends: first, that Lattimore was not entitled to recover at all because of his failure to comply with a condition precedent stated in the contract, that he should procure Workmen's Compensation insurance; second, that there was not sufficient competent proof of damages, even if the plaintiff were otherwise entitled to recover; and third, that evidence with regard to the wages of laborers was improperly excluded by the trial court.

Allen was engaged in building houses in a subdivision in Montgomery County. It entered into a contract on May 9, 1961, with Lattimore which provided, inter alia, that Lattimore ("the Sub-Contractor") should furnish all materials and perform all labor incident to forming, pouring and finishing concrete "for the construction of 20 houses or less"; that Allen ("the Builder") was to pay Lattimore for this work at specified rates per square or lineal foot (depending on the particular type of work involved). The contract also provided (by Sec. 7) that: "The Sub-Contractor agrees to carry Workmen's Compensation and Manufacturer's and Contractor's Liability Insurance policies and shall submit certificate of same to the Builder prior to commencement of work." Sec. 3 of the contract authorized the Builder, after written notice, to terminate the contract if the Sub-Contractor caused undue delay in the work or violated any condition of the contract. The contract further provided (by Sec. 10) that the contract was being entered into on a per house basis for not to exceed 20 houses and "that the Builder may terminate this contract after the completion of any number of houses by giving written notice to the Sub-Contractor."

Lattimore had done the cement work on five model or sample houses in the Allen subdivision before the contract of May 9th, 1961 was entered into. Allen had obtained Workmen's Compensation insurance for Lattimore on this work and charged its cost against amounts payable to Lattimore. Allen was unwilling to continue such an arrangement under the contract.

Lattimore obtained the insurance coverage required by the contract other than Workmen's Compensation insurance. This, he testified, he was prepared to obtain as soon as he had employees to cover. His employees were casual and he took them on only when he had a job in hand. There was evidence showing that there were practical difficulties about getting insurance or a certificate thereof in advance, but that it could be obtained quickly when needed. Lattimore visited the Allen subdivision daily to see how the work was progressing and how soon it would be ready for the concrete work. There was testimony for the defendant to the effect that Lattimore was told orally (as well as by the contract) that he would have to ob-

tain Workmen's Compensation insurance, but there was testimony by the appellee that he was told he would have to have it only when he went to work. There was also testimony that he was never told to go to work or to be ready to get to work on any particular day, and Allen denied the need for such notice, but one employee testified to having tried unsuccessfully to give it. One morning, when Lattimore visited the project, he found another cement contractor pouring concrete. Allen then told him there was enough work for two cement contractors. No notice of termination of the contract under either Sec. 3 or Sec. 10 thereof was given by Allen.

The trial court submitted the case to the jury under instructions which, we think, went further than they should have in leaving it to the jury to determine generally whether the respective parties had "complied with the written terms of the contract." They seem thus to have submitted to the jury questions of construction of the contract, which would have to be resolved before a breach could be determined. The construction of a written contract in this State is ordinarily for the determination of the court. See *B. & O. R. R. Co. v. Resley,* 7 Md. 297, 314; *Roberts v. Bonaparte,* 73 Md. 191, 199, 20 A. 918; *Ebert v. Millers Fire Ins. Co.,* 220 Md. 602, 610, 155 A. 2d 484, and cases therein cited; 4 Williston, *Contracts* (Jaeger Ed.) § 616. However, no exceptions were taken to the charge and, quite properly, no attempt has been made by the appellant's counsel on appeal (who were not trial counsel) to raise any objection on this score here. We mention the matter to avoid any implication of our approval of a departure from the established rule on this subject which might possibly arise from silence.

We do not agree with the appellant's contention that there was no sufficient proof of compliance by Lattimore with the provision for his furnishing Workmen's Compensation insurance. On the evidence which we have outlined above, we think that the jury could properly have found that Lattimore was not bound to obtain such insurance or a certificate thereof in advance of being notified or called upon to go to work; and that it would be sufficient to have a certificate of such insurance at the time when he was called upon to begin work. The jury

could further have concluded that since no written notice of default was given, the Builder-appellant had no right to terminate the contract for any alleged violation by the Sub-Contractor-appellee.

We find no merit in the appellant's claim that no sufficient evidence was produced to support the jury's award of damages. The jury awarded $3,000 in damages, or $200 for each of the fifteen houses not completed. The five previously built were deducted from the maximum of twenty mentioned in the contract in a final instruction given by the court. The plaintiff-appellee testified that completion of each house would involve "about $950.00 apiece of cement work." He also testified that his labor expenses per house would amount to about $700.00 and his other expenses (including gasoline and tools) to about $50.00, leaving a profit per house of $200.00. The appellant claims that this testimony was insufficient and speculative, and particularly urges that the appellee "never established the contract price per house." The Vice-President of the appellant company introduced certain bills in evidence which went to show that the contractor received no more than $300.00 per house for the five sample houses which had already been built, and he also testified that these houses included carports not planned for the remaining houses, which raised the average price. While the plaintiff's testimony was exceedingly general, and while he testified that his estimate was based largely on "the time put in" by his employees rather than upon the amount of work completed at the rates per square or lineal foot set forth in the contract, the appellant did not undertake to impeach it on cross-examination by inquiring as to the amount of work done. The defendant could have sought an instruction directing the jury to found its estimate of the contract price per house on the rates set forth in the contract and the evidence relating to work done. Cf. *M. & R. Builders v. Michael*, 215 Md. 340, 138 A. 2d 350. However, there was no exception to the instruction with regard to the method of determining damages, and consequently there is nothing before us for review on this score.

The appellant's third contention is that evidence was improperly excluded with regard to the wages of laborers working on cement jobs. The evidence was excluded as not pertinent. The

appellant made no proffer of what it expected to show or of how it intended to follow up this particular item, which, standing alone, would not have been very significant. We might not have great difficulty in supposing how the appellant wished to follow it up. The appellant did, however, get into evidence immediately afterwards that Lattimore had to pay his men and, supposedly, had to pay for his tools and insurance out of the gross price to be paid him by Allen; but no effort was then made to show what these items would amount to. It had also been testified by one of Allen's officials that the gross average contract price paid Lattimore for each of the first five houses had been $246.00. In these circumstances, we think that there was no such prejudice resulting from any error in the ruling complained of as would require a reversal of the judgment.

*Judgment affirmed, with costs.*