## H & R BLOCK, INC. *v.* GARLAND

[No. 128, September Term, 1975.]

*Decided June 25, 1976.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Edward Fremont Magee* and *Paul V. Niemeyer,* with whom were *Piper & Marbury* on the brief, for appellant.

*Browne L. Kooken,* with whom were *Dukes & Troese* on the brief, for appellee.

---

ELDRIDGE, J., delivered the opinion of the Court.

This case involves a suit for damages by an employee who claims that the termination of his employment constituted a breach of contract.

On December 31, 1969, Charles E. Garland entered into a written employment contract with H & R Block, Inc. The contract was initially for a term of two years, and it was renewed annually thereafter. The agreement provided that Mr. Garland was to assume managerial responsibilities for the operation of offices maintained by H & R Block for the preparation of tax returns. The offices were located in the area of southern Prince George's County, Maryland, and, by subsequent contract amendment, the area of southeast Washington, D. C. Mr. Garland's responsibilities included, *inter alia*: supervision and training of personnel; maintaining required standards of office cleanliness, efficiency and appearance; compiling various company reports, payroll registers and other data; and performing other duties relating to his managerial responsibilities. Paragraph 9 of the employment contract, entitled "Termination Upon Default," provided, in relevant part:

"If Employee shall fail to perform or comply with any term or provision hereof, and if such failure continues for more than 10 days after notice thereof from the Company, then Company may, at its option, terminate this agreement. Employee's failure to perform the duties of his employment as assigned to him in a satisfactory manner, or to abide by or carry out any policy, instruction or directive of the Company, shall, without limitation, constitute a failure of performance under this Agreement."

During the early part of 1973, Mr. Garland received several letters from Charles E. McCabe, who, as Regional Director for H & R Block, was Mr. Garland's supervisor. The letters indicated that Mr. Garland's performance was deficient in several respects, including a failure to file

numerous required reports to the Regional Office and a "lack of firm supervision of your personnel."

The following year, during February 1974, Mr. Garland received several "Office Evaluation Reports" prepared by William C. Haskell, an operations assistant for H & R Block. The reports noted deficiencies existing in the operation of several branch offices under Mr. Garland's supervision. For example, Mr. Haskell observed that at one location "there was garbage (orange peels) in the ash tray by the door and the other ash trays were dirty too. . . . The tax interview was incomplete and the return was wrong." Another location, Mr. Haskell reported, "was probably the dirtiest office I have ever seen," and "the employees were not trained in Block policy."

On February 5, 1974, Mr. Garland received a letter from M. C. Brewer, who had replaced Mr. McCabe as Regional Director, indicating dissatisfaction with several aspects of Mr. Garland's operation of the tax offices, and stating that Mr. Brewer "expect[ed] to see significant improvements." On March 18, 1974, the following letter was sent by Brewer to Garland:

"Mr. Charles Garland
c/o H & R Block, Inc.
6343 Livingston Road
Oxon Hill, Maryland 20021

Dear Charlie:

This is to confirm our earlier conversation regarding your operation. As I indicated earlier, there are several things that must happen in your operation if you are to continue with H & R Block.

It is evident that you do not delegate enough of your responsibilities to other people in your organization. Due to this you have fallen down in several areas.

1. Processing. All offices are to have a five-day turn around and you must meet this turn around. If you do get into trouble, please call me and we can arrange a different turn around schedule. I expect all of your Maryland offices

to be on instant service by April 2. Your DC offices should be on instant by April 8. You said you would do this.

2. Retraining. It is apparent that none of your employees have ever been trained properly. Receptionist training was lacking. You must constantly retrain and make sure that they are doing things "the Block way."

3. Cleanliness. All offices should have a neat and orderly appearance. Floors should be cleaned regularly, not once a month.

4. Signing. You should try to sign all offices like we signed South Capital Street and Saint Barnabas Road. Failure to do so causes both the Company and yourself to lose.

5. Employee Training. As we discussed, you are having an additional employee training session so that you will comfortably handle the April business.

6. In most offices, you need additional desks for Tax Consultants during the April rush, because this year the 15th should break all records.

In conclusion, you must set deadlines for yourself and you must meet these deadlines. Your operation must improve. If you have any questions, please call.

Sincerely,

H & R BLOCK, INC.

M. C. Brewer
Regional Director"

Subsequently, on April 15, 1974, Mr. Brewer handed Mr. Garland a termination letter, which provided:

"Mr. Charles Garland
c/o H & R Block, Inc.
6343 Livingston Road
Oxon Hill, Maryland 20021

Dear Charlie:

This letter is to notify you that since you have

failed to comply with the letter dated March 18, 1974, The Company desires to exercise its option to terminate your Manager's Agreement dated December 31, 1969.

Please Accept this letter as notice of your immediate termination.

Sincerely,

H & R BLOCK, INC.

M. C. Brewer
Regional Director"

Mr. Garland filed suit for breach of contract against H & R Block, Inc., in the Circuit Court for Prince George's County, contending that he was not given proper notice of termination pursuant to paragraph 9 of his employment contract. Additionally Mr. Garland contended that even if proper notice were given, he complied with the terms of the notice, having performed in a satisfactory manner. As to some of the items mentioned in the letter, such as the requirement that he meet a "five-day turn around," Garland said that compliance had already been achieved. He denied other allegations contained in the letter, *e.g.*, that the personnel were improperly trained and that receptionist training was lacking, and he testified that he did constantly retrain employees in the "Block way."

At the conclusion of the plaintiff's case, and again at the close of all the evidence, H & R Block moved for a directed verdict, contending that the evidence was uncontradicted that the March 18, 1974, letter indicating dissatisfaction with Garland's performance complied with the notice requirement of paragraph 9 of the employment contract, and that the evidence established that Garland had continued performing in a manner unsatisfactory to H & R Block for more than ten days after receipt of the notice. The trial court denied the motion for directed verdict and submitted to the jury both the issue of whether proper notice of non-compliance with the contract was given to

Garland and the issue of whether that non-compliance was satisfactorily corrected. The trial court also denied a jury instruction requested by H & R Block informing the jury that satisfactory performance under the contract was to be determined only by whether H & R Block, acting in good faith, was dissatisfied, and not by whether the jurors themselves thought that Garland's performance was satisfactory. The jury rendered a verdict in favor of Garland, and awarded him $18,777.00 in damages. H & R Block appealed to the Court of Special Appeals, and we issued a writ of certiorari before a decision by that court.

In this Court, H & R Block primarily argues that the trial court should have granted its motion for a directed verdict because: (1) the March 18, 1974, letter clearly complied with the unambiguous notice provisions of paragraph 9 of the employment contract; and (2) H & R Block's satisfaction with Garland's performance was to be measured by a subjective rather than an objective standard, and under that subjective test, the employer was in good faith dissatisfied with Garland's performance.

(1)

H & R Block contends that the sufficiency of the notice of Garland's failure to perform satisfactorily was a question to be determined by the trial court, and that it was error for the trial court to submit that issue to the jury. The March 18, 1974, letter, H & R Block argues, clearly complied with the provisions of paragraph 9 of the employment agreement and provided adequate notice of Garland's failure of performance.

The question regarding whether the March 18, 1974, letter constituted proper notice depends upon the construction of paragraph 9 of the employment contract. Where the terms of a contract are clear and unambiguous, the construction of those terms is within the province of the court. *Masano v. Albritton,* 245 Md. 423, 431, 226 A. 2d 299 (1967); *Rothman v. Silver,* 245 Md. 292, 296, 226 A. 2d 308 (1967); *Keyworth v. Industrial Sales,* 241 Md. 453, 456, 217 A. 2d 253 (1966); *Allen*

*Eng. Corp. v. Lattimore,* 235 Md. 182, 186, 201 A. 2d 13 (1964); *Strickler Eng. Corp. v. Seminar,* 210 Md. 93, 100, 122 A. 2d 563 (1956). Where, however, ambiguity exists, then questions concerning the meaning of contractual provisions may be submitted to the jury. *Masano v. Albritton, supra,* 245 Md. at 431; *Ebert v. Millers Fire Ins. Co.,* 220 Md. 602, 610, 155 A. 2d 484 (1959); *Montauk Corp. v. Seeds,* 215 Md. 491, 138 A. 2d 907 (1958). *See also Snider Bros., Inc. v. Heft,* 271 Md. 409, 419, 317 A. 2d 848 (1974); *Missler v. Anne Arundel County,* 271 Md. 70, 80, 314 A. 2d 451 (1974).

In the instant case, paragraph 9 of the employment contract provides that "[i]f Employee shall fail to perform or comply with any term or provision hereof, and if such failure continues for more than 10 days *after notice thereof* from the Company, then Company may, at its option, terminate this agreement." (Emphasis supplied.) Garland contends that it was at least ambiguous whether the March 18, 1974, letter was adequate notice under this provision, because the letter did not identify itself as a "10 day letter," or otherwise use such terms as "violation, default, or breach." Ambiguity was also established by parol evidence, Garland argues, because the circumstances surrounding the writing and receipt of the letter established a doubt as to whether the letter was reasonably calculated to afford adequate notice. Therefore, he urges, a jury question was presented as to whether a reasonable man would understand the nature and purpose of the communication.

We disagree. As the provisions of paragraph 9 make clear, the notice required is notice of the employee's "fail[ure] to perform or comply with any term" of the contract. No particular mode of notice is prescribed, and no special designation, such as "10 day letter," is required. The March 18, 1974, letter stated that "there are several things that must happen in your operation if you are to continue with H & R Block," that "[i]t is evident that you do not delegate enough of your responsibilities to other people in your organization. Due to this you have fallen down in several areas." The letter concluded, "Your operation must improve." We believe that this letter reasonably informed

Garland of his "failure to perform or comply with" the terms of his contract, and thus it complied with the notice provision of paragraph 9. The trial court should have determined that the March 18, 1974, letter was sufficient notice under paragraph 9 of the contract. No jury question was presented on this issue.

### (2)

H & R Block further contends that the trial court erred in refusing to apply the standard that "whether Garland's performance of his duties was satisfactory is to be measured by the subjective conclusion of H & R Block." H & R Block insists that the subjective standard was met, as the uncontradicted evidence showed that, acting in good faith, it was dissatisfied with Garland's work. Consequently, H & R Block maintains that it was entitled to a directed verdict.

Paragraph 9 of the employment contract which, as previously discussed, permitted H & R Block to terminate the contract if the employee's non-compliance with contract terms continued for more than 10 days after notice thereof, also provided, "Employee's failure to perform the duties of his employment as assigned to him *in a satisfactory manner* ... shall, *without limitation,* constitute a failure of performance under the Agreement." (Emphasis supplied.)

Under Maryland law, a contract which provides that performance of personal services must be satisfactory to the employer entitles the employer to terminate the contract if he is, in fact, honestly dissatisfied with the performance of the employee, and did not use such dissatisfaction as a mere pretense. *Ferris v. Polansky,* 191 Md. 79, 86, 59 A. 2d 749 (1948). In *Ferris,* the employer engaged an orchestra to perform at his establishment under a contract providing that "If Band proves unsatisfactory contract is subject to 2 weeks notice." The Court noted (191 Md. at 85-86):

> "In a contract where the employer agrees to employ another as long as the services are satisfactory, the employer has the right to terminate the contract and discharge the employee,

whenever he, the employer, acting in good faith is actually dissatisfied with the employee's work. This applies, even though the parties to the employment contract have stipulated that the contract shall be operative during a definite term, if it provides that the services are to be performed to the satisfaction of the employer. It is not necessary that there exist grounds deemed adequate by the trier of facts for the employer's dissatisfaction. He is the judge as to whether the services are satisfactory. However, this dissatisfaction, to justify the discharge of the employee, must be real and not pretended, capricious, mercenary, or the result of a dishonest design. If the employer feigns dissatisfaction and dismisses the employee, the discharge is wrongful. The employer in exercising the right of dismissal because of dissatisfaction must do so honestly and in good faith."

More recently, in *Volos, Ltd. v. Sotera*, 264 Md. 155, 170, 286 A. 2d 101 (1972), the Court observed that, absent ambiguity, it is "the usual rule that in employment contracts the 'subjective' rather than the 'objective' or 'reasonable man' standard of what constitutes 'sufficiency' of performance prevails." For other cases discussing the standard to be applied in various types of contracts requiring performance to the "satisfaction" of a particular party, or equivalent language, *see, e.g., First National v. Warren-Ehret*, 247 Md. 652, 657-662, 233 A. 2d 811 (1967); *Distilleries v. Machine Works*, 174 Md. 12, 18, 197 A. 599 (1938); *Devoine Co. v. International Co.*, 151 Md. 690, 693-694, 136 A. 37 (1927); *M. & C.C. of Balto. v. Ault*, 126 Md. 402, 422-426, 94 A. 1044 (1915); *Goldberg v. Feldman*, 108 Md. 330, 335-337, 70 A. 245 (1908); *Balto. & Ohio Railroad Co. v. Brydon*, 65 Md. 198, 215, 225-226, 3 A. 306, 9 A. 126 (1886); *Geiger, et al. v. The Western Maryland R.R. Co.*, 41 Md. 4, 12-13 (1874).

Turning to the instant case, Garland presented no evidence tending to show that in terminating his services, H

& R Block was not acting in good faith. In fact, all of the evidence before us on this issue supports H & R Block's position that its decision to fire Garland for unsatisfactory performance was bona fide. Both Mr. Brewer and Mr. McCabe testified that Garland's performance was unsatisfactory. Garland, in fact, admitted that he did not comply with several of the items contained in the March 18, 1974, letter. As to some of those items, Mr. Garland disagreed that a problem existed in that area. For example, although the letter stated that more desks were needed, Mr. Garland testified that he viewed the desks already present in the offices as sufficient. Such testimony, however, does no more than reflect a difference of opinion between Garland and H & R Block concerning managerial decisions, and does not attack the good faith of H & R Block's views.

In conclusion, we believe that the trial court should have granted H & R Block's motion for a directed verdict.

*Judgment reversed.*

*Case remanded to the Circuit Court for Prince George's County for entry of judgment in favor of appellant.*

*Appellee to pay costs.*