Maxwell & Ramsey, Cincinnati, Gregor B. Moorman, Cincinnati and Robert P. Moore, Cincinnati, for appellee.

Joseph O'Meara, Jr., Cincinnati, for guardian of appellant.

## CINCINNATI SUMMER OPERA ASSN v WILLIAMS

Ohio Appeals, 1st Dist, Hamilton Co

No 5411. Decided April 11, 1938

**OPINION**

By MATTHEWS, J.

This is an appeal on questions of law from a judgment for the plaintiff upon an instructed verdict in an action to recover upon two subscriptions to pay a pro rata share, subject to a stated limitation, of any deficit resulting from the operation of a summer opera at the Cincinnati Zoo. One of the subscriptions is dated April 28, 1936, and contains a limitation of $8,000. The other is dated July 20, 1936, and contains a limitation of $10,000. In all other respects, they are identical. It will

be sufficient to quote the first paragraph of the agreements. It is:

"In consideration of efforts to arrange for a presentation of a season of Grand Opera in Cincinnati, Ohio, beginning on or about June 15, 193—, and continuing for a period of two or more weeks according to the success of the enterprise, I, the undersigned, hereby agree to subscribe —————— Dollars, $———, subject to the following conditions:"

Before proceeding further in the development of the facts, it should be noted that each of the parties moved for an instructed verdict at the close of all the evidence.

The court overruled the defendant's motion, and, thereupon, sustained the plaintiff's, and then proceeded to submit only one form of verdict, complete in all respects, finding in favor of the plaintiff with a direction that the jurors sign it, which they did. The judgment was then rendered on that instructed verdict.

It is claimed that the action of the court should have taken the form of a discharge of the jury, rather than an instruction to it to return a verdict in accordance with the conclusion of the court on the facts.

We regard this objection as unsubstantial. No matter which form the action of the court might take on the motions, the finding on the issues of fact was the action of the court, and not that of the jury, and that is the substantial thing. By joining in motions asking the court to give a mandatory instruction or direction to the jury, the parties submitted the issues of fact to the court for its determination uninfluenced by the decision of any trier of the facts previously rendered. Whether the action of the court takes the form of an instructed verdict or a discharge of the jury and an announced decision of the court in some other form, the parties have obtained what they desired—an initial decision of the issues of fact by the court rather than by the jury. This conclusion is sustained fully by the decisions on the subject. **First National Bank v Hayes & Sons, 64 Oh St., 100; Industrial Commission v Corden, 129 Oh St., 344, 2 OO. 334,** and other cases.

And the court having decided the issues of fact as requested by the parties, its finding will not be disturbed or reversed, unless manifestly against the weight of the evidence. ID.

The evidence shows that the expenses of conducting the opera during the first two weeks far exceeded the income, and it is urged that, for that reason, it was not a success and that the management should not have continued the enterprise, and that the defendant cannot be charged with her proportionate part of losses incurred beyond the testing period in which it should have been concluded that to conduct the opera longer surely would add to the losses. This contention is predicated necessarily upon the conclusion that the subscription agreement provided a limitation based on successful financial operation. Does the language mean that? The trial court concluded otherwise, and we must not disturb the conclusion, unless it is manifestly wrong.

"Success" according to the dictionaries means attainment of the end desired, and that end may have no relation whatever to money or money profits. If it is to be so limited in this agreement, it must result from the surrounding facts and circumstances and not from any inherent limitation. What were the surrounding facts and circumstances? To begin with, the plaintiff is a corporation not for profit. That seems to exclude the thought that the plaintiff contemplated financial profit and loss as a result of the enterprise. As the defendant could not under any circumstances have derived a financial profit by reason of her commitment, it is equally clear that she could not have regarded the success of the enterprise as dependent upon a financial profit resulting therefrom. Furthermore, the opera had been conducted for more than five weeks when the second subscription was made. This was at least half of the entire period contemplated and at that time there had been a financial loss and it had become manifest that there would be a financial loss for the season. That appears to have been the reason for seeking additional subscriptions, so that funds would be available to meet the financial loss that was imminent.

We cannot say that the trial court erred in its construction of this contract. On the contrary, the construction accords with the ordinary meaning of the words in the circumstances in which they were used.

The defendant alleged that her signature to the later subscription had been

obtained through coercion and duress. She had the burden of proving it. While the evidence showed that she was advanced in age and had some physical ailments, there was no evidence that anyone coerced her into signing the agreements. The trial court was justified in finding that she had failed to sustain the burden of proof.

This brings us to the principal contention of the defendant, and that is that the plaintiff is not the real party in interest. The basis of this contention is that the evidence shows that these subscription agreements, together with many others were deposited, pledged, or assigned to The Fifth-Third National Bank as collateral security. The notes thus secured aggregated less than half the total amount of the subscription agreements deposited, pledged, or assigned as collateral security. In the body of the notes it was recited the collateral consisted of "Assignment of pledges for Cin. Zoo Summer Opera, Totaling $36,705." There was no other evidence of an assignment. Sometime before this action was filed, The Fifth-Third National Bank redelivered the subscription agreements sued on to the plaintiff. It is not clear from the evidence whether by this re-delivery, The Fifth-Third National Bank intended to relinquish its lien or right to hold and rely entirely upon the personal liability of the plaintiff for payment.

Now under these circumstances, can the plaintiff maintain an action upon these causes?

It should be observed here that in any aspect of the situation, the plaintiff has a substantial interest in the result of the case. No matter what view may be taken of the type of transfer—whether as a pledge or an assignment—the title transferred was not absolute. It was a transfer as collateral security to a debt. The plaintiff still had title of some sort, subject only to the lien. This was substantial in this case, as the collateral had a par value double the amount of the debt secured by it. This is not a case therefore of the principal debt exceeding the amount of the chose pledged or assigned as collateral, so that the entire beneficial ownership would be in the pledgee or assignee. Furthermore, the right to have the proceeds applied to the extinguishment of its debt made the plaintiff's interest or title a substantial one.

It results from this that the plaintiff is a real party in interest, although it may not be the sole party in interest. The Fifth-Third Bank has, or may have, an interest in the chose—may have some qualified title to the chose sued upon, and, therefore, may have been a necessary party, had objection been seasonably made.

This is not a case then in which the proof shows that the plaintiff had no title to the cause of action. On the contrary, the proof shows that it was the original owner and that it still retains some title. It therefore could maintain an action upon the chose.

Now one of the grounds of demurrer is a defect of parties plaintiff or defendant if the defect appears on the face of the petition. (§11309, GC). If it does not so appear, it may be taken advantage of by answer. (§11311, GC.) And if the objection is not made in either way, it is waived. ID.

As the defendant did not raise this objection by answer or demurrer, it must be held to have waived it.

In 30 Cyclopedia of Law and Procedure, 51 and 52, the rule is said to be that:

"When the assignment of a chose has divested the assignor of his entire beneficial ownership he cannot claim as a real party in interest even if the assignment does not vest the legal title in the assignee; but when the assignor retains a portion of the beneficial ownership, the general principle of the real party in interest gives him a standing as plaintiff. As a rule the assignee also should be a party to the suit, as co-plaintiff or as defendant. His omission, however, is ground under the codes, only for an objection because of defect of parties.

"The principle applies not only when there has been an assignment of a portion of a chose in action but also where the entire chose has been conditionally assigned as collateral security. In the latter case the assignor, it has been held, may sue in his own name even when the face value of the assigned chose is not greater than the face of the debt for which the chose has been assigned as collateral."

The trial court concluded that the plaintiff was entitled to recover the full amount, and, as already observed, this conclusion must not be disturbed unless it affirmatively appears that it is manifestly against the weight of the evidence. This does not

appear. We find the conclusion sustained by the evidence.

For these reasons, the judgment is affirmed.

ROSS, PJ, and HAMILTON, J. concur.