KEYWORTH *v.* INDUSTRIAL SALES CO., INC.

[No. 230, September Term, 1965.]

*Decided March 1, 1966.*

The cause was argued before HAMMOND, HORNEY, OPPEN-HEIMER and McWILLIAMS, JJ., and RAINE, J., Associate Judge of the Third Judicial Circuit, specially assigned.

*Bayard Z. Hochberg,* with whom was *Paul Berman* on the brief, for appellant.

*Emanuel H. Horn,* with whom was *Delverne A. Dressel* on the brief, for appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

This case is a sequel to *Keyworth v. Israelson,* 240 Md. 289, 214 A. 2d 168 (1965). That case involved proceedings in equity to determine the rights of various parties in a settlement fund, brought into being as a result of a verdict obtained by the appellant, Charles E. Keyworth (Keyworth) in a suit by Keyworth against third-party tort-feasors, and an additional sum obtained on behalf of Keyworth in settlement of an appeal. We affirmed a provision of the decree of the equity court providing that the clerk of the court retain the sum of $7200 from the fund, pending the final determination of a lawsuit of the appellee herein, Industrial Sales Co., Inc. (the Employer) against Keyworth, under a written agreement between the Employer and Keyworth. This appeal arises from a summary judgment in favor of the Employer in the lawsuit.

The agreement involved, and the circumstances under which it was executed, were considered in *Keyworth v. Israelson, supra.* Keyworth had been injured on September 29, 1959 while in the employ of the Employer when an automobile which he was operating in the course of his duties was hit by a truck. On December 31, 1959, the Employer and Keyworth entered

into an agreement (the agreement) which recited that while Keyworth was then receiving $40 a week under the Workmen's Compensation Commission's order as compensation for temporary total disability, he had been earning approximately $100 a week take-home pay and wished to receive weekly advances from the Employer in the amount of $100. The agreement provided that the Employer would pay Keyworth $100 a week from the time of the accident until he returned to work on a full-time basis; that Keyworth would maintain his suit against the third-party tort-feasors and that, upon the successful conclusion of the case, he authorized his attorney (who was also the attorney for the Employer) to issue a check to the Employer for the amount to be advanced by the Employer, excluding any bonuses or presents.

The Employer filed suit against Keyworth in the Baltimore City Court on September 11, 1964, alleging that the Employer had advanced Keyworth $7200 under the agreement and that Keyworth had recovered a judgment against the third-party tort-feasors. A motion for summary judgment was filed with the narr. Keyworth pleaded the general issue, elected a jury trial and answered the motion for summary judgment. In his affidavit in support of his answer to the motion for summary judgment, Keyworth stated that while he had been awarded a verdict of $15,000 and received an additional $1600 in settlement of his appeal, the case had not been brought to a successful conclusion, because his out-of-pocket expenses and losses amounted to over $10,000, his attorneys were demanding a fee of $5,000, the Employer's workmen's compensation insurer was claiming $3200 under its right of subrogation and, therefore, that he had not received an adequate amount to compensate him for his injuries, disability, and pain and suffering. Keyworth's deposition was taken; in it, he stated that he would have considered a verdict of $30,000 a successful conclusion of the case—nothing less. After argument, Judge Cullen found that "the words 'successful conclusion' are clear and unambiguous, offer no genuine dispute as to a material fact and do not constitute a valid defense to this action. As the pleadings show that the Defendant received a verdict of $15,000, subsequently increased to $16,600, this Court finds that the Plaintiff is entitled, as a matter of law, to a judgment in the amount of $7,200."

Keyworth contends that whether or not his personal injury case resulted in a "successful conclusion" requiring repayment of the $7,200 under the agreement is a matter to be determined by a jury, on all the facts and circumstances of the case. Maryland Rule 610 provides for summary judgment only when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. *Strickler Eng. Corp. v. Seminar,* 210 Md. 93, 100, 122 A. 2d 563 (1956), see also *Guerassio v. American Bankers Corp.,* 236 Md. 500, 503, 204 A. 2d 568 (1964) and authorities therein cited. Keyworth submits that, in a motion for summary judgment, the court must consider the deposition as well as the pleadings *Evans v. Johns Hopkins Univ.,* 224 Md. 234, 239, 167 A. 2d 591 (1961) and that, under the circumstances, it was for a jury to determine how much money constituted a successful conclusion of the tort case.

The construction of a written contract in this State is ordinarily for the determination of the court. *Allen Eng. Corp. v. Lattimore,* 235 Md. 182, 186, 201 A. 2d 13 (1964) and authorities therein cited; *Montauk Corp. v. Seeds,* 215 Md. 491, 496, 138 A. 2d 907 (1958). The questions here are whether the written agreement is susceptible of a clear and definite understanding, and what effect, if any, is to be given to Keyworth's interpretation of it.

Chief Judge Brune, for the Court, considered the theory of "objective law" in *Slice v. Carozza Prop., Inc.,* 215 Md. 357, 368, 137 A. 2d 687 (1958) and set forth the principle as follows:

> "As we turn to the authorities, we may note first that the theory of 'objective law' of contracts has been almost universally adopted by this time. The written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding, or unless there is fraud, duress or mutual mistake. *Ray v. Eurice,* 201 Md. 115, 93 A. 2d 272. '* * * where there has been an integration of an agreement,

those who executed it will not be allowed to place their own interpretation on what it means or was intended to mean. The test in such case is objective and not subjective. * * * *Williston* * * * Sec. 94, page 294, says: "It follows that the test of a true interpretation of an offer or acceptance is not what the party making it thought it meant or intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." ' *Ray v. Eurice, supra,* p. 127."

See also Restatement, *Contracts* § 230 (1932).

In this case, Keyworth's deposition as to what he thought the phrase "successful conclusion" of the litigation meant is not the test, nor does his interpretation cast doubt or create an ambiguity, if the language used is clear and definite. In *Keyworth v. Israelson, supra,* at 309, we had occasion to construe the agreement in connection with our holding that, under it, the Employer had an equitable lien on the fund for the amount of its advances. We said that there was "a clear indication that the parties to the agreement looked to the creation of a fund consisting of the proceeds of the verdict or settlement resulting from the third-party action; and that Plimack was to receive the proceeds and was to use them, in part, for the repayment of the advances made by the Employer. There was, in effect, not only a conditional promise by Keyworth to repay the Employer and to transfer property in payment of his debt but an implied contract to assign the fund resulting from the successful prosecution of his third-party action as security for his indebtedness. We think the agreement between the Employer and Keyworth, construed in the light of the facts and circumstances, meant that the source of the monies to be refunded would be the monies actually paid by the third-party defendants, Brown and Fleet Transfer Company, and that these monies were to be held as security for the repayment."

On the undisputed facts, Keyworth, as a result of his litigation, received a total of $16,600. His out-of-pocket expenses and losses came to $10,361.55, but this total included $7,057.15 for loss in salary, which, while a proper item in his claim for

damages, was more than covered by the $7200 which the Employer advanced him, on the basis of the salary he had been receiving. As the order of the equity court in connection with the distribution of the fund shows, even after the repayment to the Employer's workmen's compensation insurance carrier under its right of subrogation, the repayment of the $7200 to the Employer, and the payment of $5000 as counsel fee to Keyworth's attorneys, there was a residue for Keyworth of $686.82. Keyworth has consistently objected to the amount of the counsel fees, and, in the prior case, we remanded this question to the lower court for the taking of additional testimony and further proceedings. However, irrespective of this phase of the matter, we find that, on all the circumstances, the words "successful conclusion" as used in the agreement are clear and unambiguous, and that the lower court was correct in holding, as a matter of law, that the Employer was entitled to a judgment of $7200.

As we pointed out in the prior case, there was no legal obligation of any kind on the Employer to make the advances. Under the agreement, Keyworth received money in lieu of salary to which he was not entitled but which he needed. The Employer obviously wished to have Keyworth return to his employment when he was able to do so. Keyworth was placed under no requirement to return the money unless his litigation produced the funds necessary to do so, and the Employer was given no right to demand repayment except upon the same condition. There was no reason for Keyworth not to repay, as long as he did not have to do so except through the creation of the fund, and no reason for the Employer to waive repayment if Keyworth, through the litigation, received enough to cover the amounts he had gratuitously received. This, under the circumstances, was the obvious meaning of the agreement. The test of whether or not the litigation was successfully concluded on the facts before us, is not whether Keyworth was satisfied or dissatisfied with what he received, but whether the net amount which he recovered was enough to cover the advances which the Employer had made to him. The amount Keyworth received as a result of the litigation, even after deduction of the amounts of the claims which had priority, was more than sufficient for

that purpose. The clear meaning of the agreement, on the facts, is that the litigation was successfully concluded.

Keyworth argues that the verdict of the jury, even though in his favor, might have been only in a nominal amount, and that, in such event, the result of the litigation would in fact have been unsuccessful, or, at least, the question of whether it was successful or not, within the meaning of the agreement, would have been a jury question. He contends that the result is the same when the amount he receives could be considered inadequate to compensate him for his injuries and losses. The answer to this contention is that a contract is to be construed, not on the basis of hypothetical eventualities, but in the light of the actual circumstances. Restatement, *Contracts* § 235(d) and comment on Clause (d) (1932). See e.g. *Bishins v. St. Barnabas Corp.,* 221 Md. 459, 158 A. 2d 94 (1960) and *Slice, supra.* Here, the situation of the parties and the accompanying circumstances at the time the agreement was entered into make it evident to us that the conclusion of the litigation was to be deemed successful if it produced enough funds, which it did, for Keyworth to repay the Employer for the amounts he had received from it.

Keyworth argues that, because the Employer's counsel drafted the agreement, any words of doubt or ambiguity must be taken against the Employer. In the prior case, we held that, while the attorney acted for both the Employer and Keyworth in the drawing of the agreement, there was no concealment or any undue means used to obtain Keyworth's consent, and that Keyworth entered into the agreement voluntarily. Moreover, as we have said, we find no doubt or ambiguity in the wording of the agreement as applied to the particular facts.

Dictionary definitions of the word "successful", cited by Keyworth, give little help in the specific legal issue before us. Insofar as they indicate a subjective standard, they are at variance with the legal principle of contractual interpretation set forth in *Slice.* Nor do we regard the decisions cited by Keyworth as contrary to the conclusion we have reached. *Dorman v. Humphrey,* 278 App. Div. 1010, 106 N. Y. S. 2d 142 (1951) *modified* 279 App. Div. 1040, 112 N. Y. S. 2d 585 (1952) and *Diamond v. Diamond,* 200 Misc. 1074, 108 N. Y. S. 2d

864 (1951) *aff'd* 281 App. Div. 1015, 121 N. Y. S. 2d 280 (1953) both turn on interpretations of the New York General Corporation Act, which provided that special costs and attorneys' fees could be awarded for the successful defense of a derivative stockholder's action. In *Dornan,* it was held that the defendant was successful in defending the stockholder's suit when the amended bill of complaint was dismissed because of the Statute of Limitations. In *Diamond,* it was held the attorney for the defendant was entitled to expenses and counsel fees from the corporation despite the fact that the complaint as to the individual defendant was dismissed on the ground that the plaintiff participated in the wrongdoing of which he complained. In both cases, the question of whether the defense had been successful was decided as a matter of law. *Batten v. A. T. Benge Drug Co.,* 162 Iowa 280, 144 N. W. 37 (1913), held as a matter of law that, where the defendant in a suit to abate a liquor nuisance voluntarily abated the alleged nuisance and then moved to dismiss the action and the motion was sustained, the attorney fee was not taxable against him as part of the costs. There was a statutory provision that action to enjoin nuisances may be brought by a citizen and, if the plaintiff is successful, an attorney's fee shall be taxed as costs in his favor. The court held that, under the statute and the circumstances of the case, the right to the attorney's fee never accrued because the case had not been prosecuted.

In *Cincinnati Summer Opera Ass'n. v. Williams,* 58 Ohio App. 513, 16 N. E. 2d 1000 (1938), the defendant had executed two subscription agreements to pay a pro rata share of any deficit resulting from the operation of a summer opera. The subscription stated that it was made in consideration of efforts to arrange for a presentation of a season of grand opera beginning on a certain date and continuing for a period of two or more weeks, according to the success of the enterprise. The parties submitted the issues of fact to the lower court and the court entered findings for the plaintiff. The defendant contended on appeal that, because the expenses during the first two weeks far exceeded the income of the opera, it was not a success and should not have been continued. The Ohio Court of Appeals for Hamilton County affirmed the judgment, stating that the

appeal was on questions of law and holding that as the defendant's subscription had not contemplated any financial profit it was clear that she could not have regarded the success of the enterprise as dependent upon a profit resulting therefrom. *Cole v. Richmond Mining Co.,* 18 Nev. 120, 124, 1 Pac. 663 (1883), was an action by an attorney to recover a counsel fee which was conditioned upon the defendant company being successful in certain litigation. The case was submitted to a jury which rendered a verdict in the plaintiff's favor. The lower court granted a new trial but, on appeal, the Nevada Supreme Court reversed the decision below and reinstated the verdict of the jury. The case involved a factual question as to the terms of the oral contract but the court, on appeal, in reinstating the jury's verdict, held that the defendant company was successful in the litigation even though it did not recover all that it claimed in its answer. The court said: "A party, however, may be successful in a suit without winning everything that is asked for. The question of whether a party is successful or not, depends upon the particular facts of each case * * *"

*Moore v. Otto Gas Engine Works,* 136 App. Div. 713, 121 N. Y. S. 631 (1910), was an action to recover damages to property caused by alleged negligence of the defendant in installing a pumping engine under a contract providing for payment when the engine should be in successful operation. There were disputes as to whether, as part of the contract, the defendant assumed responsibility for the effect of the operation of the engine on other portions of the pumping machinery and as to whether the alleged faulty erection of the engine and accessories was the proximate cause of the injury. The court below granted a motion for a non-suit; the Appellate Division reversed and granted a new trial holding that both these questions were issues for the jury.

In the opinions in these cases, there are discussions of the general meaning of the word "successful" and the courts in some of the cases cite dictionary definitions. In each case, however, the question was considered in the context of the actual circumstances and in the cases involving statutes in the light of the wording of the particular provisions. The questions were decided as matters of law, except in *Cole,* where the terms of

the oral contract were in dispute, and in *Moore,* where there were factual questions as to the meaning of the contract in respect of other portions of the equipment and proximate causation. Insofar as these cases turn on the construction of the meaning of the word "successful" in the context of the particular facts, they are in accord with the decision we have reached. General discussions of the meaning of the word "successful", as we have stated, shed little light on the construction of the agreement before us, in view of its nature and the specific circumstances under which it was made. The meaning of the agreement here, to a reasonable person in the position of the parties, is clear and unambiguous and under it the conclusion of the litigation must be deemed to have been successful.

*Judgment affirmed; costs to be paid by appellant.*