STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY *v.* HEARN, Administratrix et al. HEARN, Administratrix et al. *v.* UNSATISFIED CLAIM AND JUDGMENT FUND BOARD et al.

(Two Appeals in One Record)

[No. 292, September Term, 1965.]

*Decided May 27, 1966.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY, MARBURY, OPPENHEIMER and BARNES, JJ.

*D. William Simpson* and *John W. T. Webb,* with whom were *Webb, Anderson & Burnett* on the brief, for the State Farm Mutual Automobile Insurance Company, one of the appellants.

Submitted on brief by *Vaughn E. Richardson* and *Patrick L. Rogan, Jr.,* for Elizabeth P. Hearn, Administratrix et al., the other appellants.

*William A. Franch,* with whom were *McWilliams & Melvin* on the brief, for Robert Douglas Griffith, one of the appellees.

*R. Randolph Victor, Assistant Attorney General,* with whom was *Thomas B. Finan, Attorney General,* on the brief, for the Unsatisfied Claim and Judgment Fund Board, the other appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

This appeal from a decree in a declaratory judgment proceeding raises, albeit inchoately, the relative rights and obligations of an additional insured and the insurer in respect of the giving of notice under an automobile liability insurance policy after accident and suit. The facts before us are uncontradicted.

Appellant, State Farm Mutual Automobile Insurance Company (State Farm) issued to Delores Ann Griffith (Delores) an automobile liability insurance policy. This policy extended coverage to the use of a non-owned automobile when being used by the named insured or a relative who is a resident of the same household. As a condition precedent to any obligation on the part of the insurer, the insured was required to give written notice of the accident to the insurer as soon as practicable and immediately forward to the insurer every demand, notice, summons or other process received by him.[1]

---

1. The pertinent provisions of the policy are as follows:

"INSURING AGREEMENT II—NON-OWNED AUTOMOBILES

"Such insurance as is afforded by this policy under coverages A, B, Division 2 of C and M, D, D-50, F, G and H with respect to the owned automobile applies to the use of a non-owned automobile by the named insured or a relative, and any other person or organization legally responsible for the use by the named insured or relative of an automobile not owned or hired by such other person or organization provided such use is with the permission of the owner or person in lawful possession of such automobile * * *

* * *

"DEFINITIONS—INSURING AGREEMENTS I AND II

"Named insured—means the individual so designated in the declarations and also includes his spouse, if a resident of the same household * * *

* * *

"CONDITIONS—INSURING AGREEMENTS I AND II

"(Policy Conditions 1 through 10 on page 9 also apply.)

"11. Notice of Claim or Suit—Coverages A and B. The

On March 3, 1964, Robert Douglas Griffith (Robert), the husband of Delores, the named insured, was an occupant in a motor vehicle that was involved in a collision. On that day, William Brewster, a cousin of Robert, either borrowed or obtained an automobile belonging to Verna Griffith, mother of Robert. Later on that night, while Brewster, Robert and one Lester Orville Hearn, Jr. were occupants of this car, a collision occurred and Hearn was killed.

On April 10, 1964, suit was filed in the Circuit Court for Wicomico County by the appellee, as administratrix of Hearn's estate, against both Robert and Brewster to recover damages for the death of Hearn. The first and second counts of this declaration alleged that Robert was driving the automobile in which Hearn was a passenger and the third and fourth counts alleged that Brewster was operating the vehicle.

Following the accident, neither Robert nor Delores gave any notice to State Farm of the occurrence and the summons and declaration served on Robert were never forwarded to State Farm. The first notice of this accident received by State Farm was by a letter from Kenneth Link, an investigator evidently

insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative * * *

\* \* \*

"(These Policy Conditions apply to all coverages unless otherwise noted)

"1. Notice of Accident, Occurrence or Loss. In the event of an accident, occurrence or loss, written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured, and also reasonably obtainable information respecting the time, place, circumstances of the accident or occurrence, names and addresses of injured persons and available witnesses. In the event of theft, larceny, robbery or pilferage prompt notice also shall be given to the police.

"2. Action against Company. No action shall lie against the company:

(a) Unless as a condition precedent thereto there shall have been full compliance with all terms of this policy * * * "

working for the Unsatisfied Claim and Judgment Fund Board, dated July 20, 1964 and received by the agent for State Farm on July 21, 1964. After State Farm received notice, it conducted an investigation, and then, on September 18, 1964, disclaimed any coverage to Robert for the accident.

On October 2, 1964, a petition for declaratory judgment was filed by the appellee in the Circuit Court for Wicomico County against Robert, State Farm, and the Unsatisfied Claim and Judgment Fund Board asking that Robert be declared an insured of State Farm and that State Farm is obligated to defend Robert in the appellee's suit, or, in the alternate, that Robert be declared an uninsured motorist and that the appellee's claim comes within the provisions of the Unsatisfied Claim and Judgment Fund law. Robert, in his answer, claimed to be an insured of State Farm under his wife's policy. State Farm, in its answer, denied Robert was protected under Delores' policy, giving as reasons, *inter alia,* that Robert failed to report the accident and failed to give any notice of the suit filed against him. Robert, in an amended answer, denied that he was the operator of the car which caused Hearn's death.

The case was tried before Judges Taylor (now retired), Prettyman and Mace. Delores testified that at the time of the accident, she was home and the car was home. She did not know her insurance had anything to do with Robert or that it covered him. She only learned of the possible coverage from Link, evidently from Link's investigation in July 1964. Robert testified he was not familiar with the policy or what it covered. It was not until the summer of '64 that he too learned from Mr. Link that he might be covered following the accident. Robert's education had stopped at the seventh grade. He did not know whether the suit that was filed against him alleged he was driving his mother's automobile at the time of the accident because he did not read the declaration that was served on him. Because of the objections of Brewster's attorney, no testimony was allowed at the trial to show who was actually driving the car. It does not appear from the evidence whether or not Delores ever read the policy which State Farm had issued to her, or whether she had even discussed it with Robert.

At the conclusion of the testimony, the court stated that it

felt Robert was an insured of State Farm on the date of the accident, and that State Farm had a duty to defend Robert in the suit which the appellee had brought. A decree was signed to this effect. No findings of fact or conclusions of law were given as to any of the issues involved.

The issues inherent in the case are in part factual and in part legal. Admittedly, Robert was an additional insured under the policy. As conditions to his right to have State Farm defend the action brought against him, he was under the obligations to report the accident "as soon as practicable" and to forward "immediately" to State Farm the summons or other process served upon him in connection with the suit. Whether or not he reported the accident as soon as practicable may depend upon a determination of whether the fact he did not know he was covered by his wife's policy of itself excuses his failure to report —a question of law. If, on the other hand, the lower court's determination of this phase of the matter rested upon a factual finding that Robert reported the accident as soon as practicable in view of all the circumstances, that determination might be reviewable only under Maryland Rule 885, to be reversed only if clearly erroneous. See *Lennon v. American Farmers Mut. Ins. Co.,* 208 Md. 424, 431, 118 A. 2d 500 (1955). Whether Robert complied with the condition to report the filing of the suit against him "immediately" is a separate, although correlative question, involving, first, the construction of the clause, ordinarily a matter for the court (*Keyworth v. Industrial Sales Co.,* 241 Md. 453, 456, 217 A. 2d 253 (1966) and cases therein cited) and, second, a factual determination in the light of the legal construction. The correctness of such a factual finding, again, might or might not turn on the legal question of whether lack of knowledge of the coverage of itself relieves an additional insured of the obligation which otherwise would rest upon him as a condition to coverage.

In addition to these issues, there is the question of the effect, if any, of the provisions of Code (1964 Repl. Vol. Cum. Supp.) Article 48A, § 482, which reads as follows:

"Where any insurer seeks to disclaim coverage on any policy of motor vehicle liability insurance issued by it, on the ground that the insured or anyone claim-

ing the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving requisite notice to the insurer, such disclaimer shall be effective only if the insurer establishes, by a preponderance of affirmative evidence that such lack of cooperation or notice has resulted in actual prejudice to the insurer."

That statute, by its terms, did not become effective until June 1, 1964. It was enacted at the next session of the General Assembly after this Court's decision in *Watson v. United States Fid. & Guar. Co.*, 231 Md. 266, 189 A. 2d 625 (1963), in which it was held that, in order to deny liability under a policy for noncompliance with the condition of notice, the insurer need not show that it was prejudiced by the failure to give notice. The applicability of the statute, *vel non,* was briefed and argued in this appeal. No contention is made that the question was not argued below, and, for all that appears in the record, the conclusion of the lower court may have been based on a determination that the statute was retroactive and therefore State Farm could not avail itself of the defense of lack of notice because it did not show prejudice.

If such a conclusion is the basis for the court's decree, the conclusion is erroneous. "The general presumption is that all statutes, State and federal, are intended to operate prospectively and the presumption is found to have been rebutted only if there are clear expressions in the statute to the contrary. Retroact[ivity], even where permissible, is not favored and is not found, except upon the plainest mandate in the act." *Bell v. State,* 236 Md. 356, 369, 204 A. 2d 54 (1964). See also cases cited in 20 M.L.E. Statutes § 164 (1962). This rule of construction is particularly applicable where the statute adversely affects substantive rights, rather than only altering procedural machinery. *Beechwood Coal Co. v. Lucas,* 215 Md. 248, 253-54, 137 A. 2d 680 (1958) and cases therein cited. See also *Janda v. General Motors Corp.,* 237 Md. 161, 169-71, 205 A. 2d 228 (1964).

We deem it evident that the statute here involved affects substantive rights. Before the statute, the insurer was not liable to defend an insured, whether named or additional, under

a policy if due notice was not given. Compliance with the policy provision by the assured was a condition precedent to the insurer's liability, whether or not the insurer was prejudiced. By the terms of the policy, before the statute, the insurer had a contractual right to deny liability if the conditions were not complied with, irrespective of prejudice. *Watson, supra; Employers' Liability Assur. Corp. v. Perkins,* 169 Md. 269, 283-84, 181 Atl. 436 (1935). In this case, the accident occurred on March 3, 1964, suit was filed against Robert on April 10 and the statute did not become effective until June 1. The substantive right of State Farm to notice in accordance with the policy had accrued before the statute came into effect.

If the court below did not rest its decree on a retroactive construction of the statute, then, impliedly, it must have found that Robert gave notice of the accident and suit in accordance with the terms of the policy. However, the legal effect of such a finding on appellate review may depend on the reasons upon which it was based.

There is general agreement in the authorities that whether notice of an accident was given by the named insured to the insurer as soon as practicable depends on the facts and circumstances of each particular case. 8 Appleman, *Insurance Law & Practice,* § 4734 (1942), 7 Am. Jur.2d, Automobile Insurance, § 144 (1963), Annot. *Liability insurance: clause with respect to notice of accident or claim, etc. or with respect to forwarding suit papers,* 18 A.L.R.2d 443, 464-65 (1951) and cases therein cited. Courts have found more difficult the determination of the question of whether, as here, an additional insured under an omnibus clause of a policy has given notice in accordance with the policy. The decisions reflect the weighing of the position of the parties in the construction of the clause, as part of the circumstances in which the policy was written. See Restatement, *Contracts,* §§ 230, 235(d) Comment(e) (1932). The insurer needs prompt notice in order to make a timely and adequate investigation, to ascertain possible defenses and otherwise to prepare itself to represent the person covered in the litigation. On the other hand, the additional insured is not a direct party; he may not, in the exercise of reasonable care, realize he was covered, by the terms of the policy, or even that

there was a policy; nevertheless, the coverage of additional insureds is included in the premium which was paid for the policy.

It has been said that an additional insured could not be expected nor required to give notice before he knew of the existence of the policy or the fact that he was covered thereby. 8 Appleman, *supra*, § 4738, 7 Am. Jur.2d, *supra*, § 144, note 10. In our opinion, however, the cases do not support such a broad conclusion of law, absent a showing of due diligence, in circumstances such as are here involved.

For example, in *Home Indemnity Co. v. Ware*, 285 F. 2d 852 (C.A.3, 1960), an additional insured was driving a stolen vehicle; the failure of both the insured and the additional insured to give notice until almost three months after the accident was excused, in view of the particular facts and circumstances; the court held that a layman reading the policy could not reasonably have been expected to know that it covered the use of a stolen automobile. In *National Surety Corp. v. Wells*, 287 F. 2d 102 (C.A.5, 1961), a sixteen year old boy was driving his father's car with permission, and notice of the accident was promptly given by the father, although not by the son. The court affirmed the finding below that under the circumstances timely notice had been given. *Costanzo v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co.*, 30 N. J. 262, 152 A. 2d 589 (1959) involved the use of an insured automobile driven, with the permission of the son of the owner, by a fellow sailor; the son and the driver of the car were stationed at the same naval base. There was a dispute as to whether the additional insured, the driver, was aware of coverage. The court held that the issue of whether timely notice was given under the circumstances was a question of fact and remanded the case for such determination. In *Allstate Ins. Co. v. Darter*, 361 S. W. 2d 254 (Tex. Civ. App., 1962), an additional insured, Welch, just under twenty-one years of age, was driving the car of the named insured, Darter. Welch gave prompt notice of the accident to his own insurer, but did not know the name of Darter's insurer, never saw the policy, and did not know he was covered thereunder. The jury was asked whether notice was given by Welch as soon as practicable, under an instruction that the phrase meant as soon as notice would have been given by an

ordinary prudent person in the exercise of due care in the same or similar circumstances. The jury found notice was given as soon as practical, even though Welch's insurer did not learn of the accident until 109 days after its occurrence, and the verdict was upheld. In *Wasson v. Atlantic Nat'l Ins. Co.,* 207 Cal. App. 2d 464, 24 Cal. Rptr. 665 (1962), the additional insured had no knowledge that he was included within the terms of a policy insuring a named insured who, although present when the accident occurred, was not then identifiable as a party involved. The appellate court refused to disturb the implied finding of the lower court that the additional insured did not act unreasonably in failing to give notice to the insurer for 13 months. In *Hughey v. Aetna Casualty & Surety Co.,* 30 F.R.D. 508 (D.Del. 1962), an additional insured was driving a borrowed car and the car he was driving did not come into physical contact with the other automobiles involved in the collision. He was accused of causing the accident by driving over the center line of the road, but did not know he was involved, except perhaps as a witness, until he was sued. He had not seen or read the policy, but he had reported the accident to his own insurer. There was a delay of 117 days in reporting the accident to the insurer of the automobile driven by Hughey. The court held that under these circumstances the insurer was not entitled to summary judgment under Delaware law for failure of the additional insured to give timely notice.

Our consideration of these cases, and many others dealing with the issue involved, leads us to the conclusion that failure of an additional insured to know he was covered by the policy is only one of the circumstances to be considered in determining whether notice of the accident was given as soon as practicable. As in other questions involving the determination of whether due diligence was used, all the relevant facts are to be considered, and the finding of the trier of facts is not to be disturbed unless clearly erroneous. Here, we do not know what determination of fact, or conclusion of law, was made by the court below.

The policy provides that the additional insured must both give the insurer notice of the happening of the accident as soon as practicable and give "immediate" notice of any summons filed

against him. " '[I]mmediate' * * * is not immediate in the sense of an instantaneous transmission of the process the moment the constable departs. Uniformly, this, as in the case of notice of the occurrence * * *, is treated as requiring transmission within a reasonable time considering all of the circumstances." *National Surety Corp. v. Wells, supra,* 287 F. 2d at 105-06. See also *North River Ins. Co. v. Gourdine,* 205 Va. 57, 62-63, 135 S. E. 2d 120 (1964) and 8 Appleman, *supra,* § 4734 and Annot. 18 A.L.R.2d, *supra,* at 462-64 and cases therein cited.

It appears to us that the substantial merits of the case will not be determined by affirming, reversing or modifying the decree and that the purposes of justice will be advanced by permitting further proceedings with the introduction of additional evidence or otherwise and with the specific findings of fact indicated in this opinion. Therefore, in accordance with Maryland Rule 871 a, we remand the case to the lower court (now consisting of Judges Prettyman and Mace) for such further proceedings.

> *Case remanded without affirmance or reversal for further proceedings consistent with the views expressed in this opinion; costs to abide the result.*