## ALLSTATE INSURANCE COMPANY *v.* HUMPHREY, ET AL.

[No. 329, September Term, 1966.]

494

*Decided May 2, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, OPPENHEIMER and BARNES, JJ.

*F. Gray Goudy,* with whom was *Herbert Burgunder, Jr.,* on the brief, for appellant.

*Alfred J. O'Ferrall, III, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for the Unsatisfied Claim and Judgment Fund Board, part of appellees; and *William A. Franch,* with whom were *Wray & Serio* on the brief, for Floyd Junior Humphrey, other appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

The question before us, on undisputed facts, is the meaning of the clause of an insurance policy providing coverage to any

relative of the named insured with respect to a non-owned private passenger automobile "not regularly furnished for use of such relative." The appellee, Floyd Junior Humphrey (Floyd) instituted suit in the Circuit Court for Anne Arundel County against the appellant, Allstate Insurance Company (Allstate) to determine whether Floyd was covered by Allstate's insurance policy, issued to Lester C. Hause (Hause), Floyd's father-in-law, with whom Floyd and his wife were living at the time of the accident. The policy was issued to Hause, who was the "named insured." The policy described an "owned automobile" owned by Hause, which is not the automobile here involved. It is conceded by Allstate that, within the meaning of the policy, Floyd was a relative of Hause, the named insured, and was operating a "non-owned" automobile.

The accident which gave rise to this litigation occurred on October 1, 1964, in Baltimore. Floyd was operating an automobile owned by his brother, James, who lives in Parsons, West Virginia. Floyd and his wife had been living in Baltimore with the Hauses since September 4, 1964. Floyd was working in Glen Burnie, Anne Arundel County. On September 28, Floyd and his wife drove to Parsons to visit James, in an automobile which Floyd owned. Floyd's car became disabled in Parsons, and he took it for repairs to a garage in that city. He was told the repairs would take about three days. Floyd had to return to work immediately. He told James of the difficulty and was given permission to drive James' 1958 Plymouth. Floyd told James he would have the car back in two weeks. The accident occurred four days after Floyd had borrowed his brother's car; at the time, Floyd was driving that car from work to the Hause residence. No restrictions had been imposed by James upon Floyd's use of the car; he used the car as he would have used his own. Floyd had driven his brother's car on only one previous occasion, for a week, six or seven months before the accident.

Floyd was sued as a result of the accident. Allstate was given notice, but denied any coverage under its policy and refused to defend the case, on the ground that, at the time of the accident, Floyd was driving James' automobile, which had been regularly furnished for Floyd's use. Judge Childs, in the court below,

noted that it was agreed by all the parties that the facts were not in dispute, and, on the facts, held that the automobile had not been regularly furnished for Floyd's use, within the meaning of the policy, and that, accordingly, Floyd was covered.

On this appeal, Allstate contends that the policy is not ambiguous and that its construction is therefore a matter of law for the courts. It contends further that, under the authorities, the policy should be construed to mean that an automobile is "regularly furnished" for use where the bailee has a blanket permission to use the loaned vehicle, uses it as his own during the term of the bailment and has it continuously available for his use during the period. Allstate submits that it is the unrestricted use of the vehicle which is determinative and that the duration of the period in which that use is permitted is immaterial.

"It is well established that the provisions of insurance policies, prepared as they are by the insurance companies, are, in the case of ambiguities, to be construed strictly against the company preparing the policy and in favor of the insured. *Ebert v. Millers Fire Insurance Company,* 220 Md. 602, 155 A. 2d 484 (1959)." *Grain Dealers Mut. Ins. Co. v. Van Buskirk,* 241 Md. 58, 71, 215 A. 2d 467 (1965). Absent an ambiguity, Maryland has not adopted the rule followed in many jurisdictions that an insurance policy is to be most strongly construed against the insurer. *Ebert, supra,* at 220 Md. 611.

We agree with Allstate that the phrase of the policy here involved is not ambiguous in the sense that its general meaning is uncertain or that it can be construed in alternate ways. That a term cannot be precisely defined so as to make clear its application in all varying factual situations does not mean that it is ambiguous. We agree further that, as Chief Judge Brune said for the Court in *Ebert,* where the record presents no dispute as to the facts which are pertinent to the question of coverage, the question is "one of the construction of the contract in the light of the language employed in the contract, the subject matter and the surrounding circumstances. When these are clear, it is the province of the court, rather than of the jury, to construe the contract." 220 Md. at 610. See also *Keyworth v. Industrial Sales Co.,* 241 Md. 453, 458, 217 A. 2d 253 (1966).

We do not agree, however, that the phrase "not regularly furnished for use" is to be given the restrictive meaning for which Allstate contends. Under that contention, the element of the period for which the use of the non-owned automobile is furnished would be eliminated from consideration in determining whether the exclusion from coverage is applicable to the particular facts. Such a conception is not in accord with the general meaning of the words. *Black's Law Dictionary,* 4th ed. (1951), defines the word "regular" as "steady or uniform in course * * *, the antonym of 'casual' or 'occasional.' " *The New English Dictionary* (Oxford 1914) defines the word as follows: "characterized by the presence or operation of a definite principle; marked or distinguished by steadiness or uniformity of action, procedure, or occurrence;" "recurring or repeated at fixed times;" "taking place or recurring at short uniform intervals;" "habitually or customarily used * * *;" "observing fixed times for, or never failing in, the performance of certain actions or duties." *Webster's 3d New International Dictionary* (1961) gives the meaning of the word as: "steady or uniform in course, practice, or occurrence;" "steadily pursued;" "functioning at proper intervals;" "recurring * * * at stated, fixed, or uniform intervals." *The New Century Dictionary* (1953) defines the word as: "performing certain recurring actions or duties without failure, or observing fixed times for the performance of these."

There are many decisions in other states which have considered the phrase involved in this case, and, in the majority of them, the period of time for which the use of the automobile was given is considered as one of the elements which determine whether or not there is coverage. Appleman states: "The words 'regular use' suggest a principal use as distinguished from a casual or incidental use." 7 *Appleman Insurance Law and Practice* § 4455 (1962). See 7 Am. Jur. 2d *Automobile Insurance* § 107 and Annot., "Exclusion from 'drive other cars' provision of automobile liability insurance policy of other automobile owned, hired, or regularly used by insured or member of his household," 86 A.L.R.2d 937, 951-56 (1962), and cases therein cited. If Allstate had wished, it could have incorporated in the policy the restrictions on the meaning of "regularly used"

which it now asks the Court to find implied in the language actually used. We hold that the period and frequency of the permitted use are elements to be considered in the determination of whether, on the facts, there was coverage under the policy.

That determination, in favor of Floyd, was made by Judge Childs as a conclusion of law on the undisputed facts. In many cases in other jurisdictions, the question has been treated as one of fact, or one of mixed law and fact, in which the presumption of the correctness of the decision of the trier of the facts applied. See cases cited in 86 A.L.R.2d, 951-56, *supra*. We find it unnecessary to review the decisions on this point. Here, there was no evidentiary dispute, no question of the credibility of the witnesses, no factual inference to be drawn. Under these circumstances, like Judge Childs, we treat the question of coverage as one of law. See *Ebert, supra,* and *Giokaris v. Kincaid,* 331 S. W. 2d 633 (Mo. 1960).

In the leading case of *Aler v. Travelers Indemnity Co.,* 92 F. Supp. 620 (D. Md. 1950), the insured had an accident while driving an automobile owned by his mother-in-law, who lived in his household. That vehicle was used by the insured and his family interchangeably with the insured's own automobile. Judge Chesnut held that even though the appellant did not use the car often, "he was at liberty to use it when desired" (92 F. Supp. at 623), and that, as a conclusion of law, there was no coverage under the policy because the non-owned vehicle was "furnished for regular use" of the insured. *Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co. v. Robertson,* 259 F. 2d 389 (4th Cir. 1958), is closer to the facts of the present case. There, the appellee and her husband had returned from their wedding trip. The husband left the appellee at her parents' home in Bassett, Virginia, while he went to North Carolina to find a home for them. The appellee's car was not in good condition, so the husband took it with him to have it repaired; they planned to exchange their cars the next week-end. However, unlike the situation in the case before us, it was later agreed that the appellee's use of her husband's car was to continue for another week, so that she and her mother could visit her father, who was dying in a hospital 300 miles from Bassett. It was during the period of this second emergency, ten days after the original

loan of the vehicle, that the accident occurred. The District Judge held there was coverage, but the Circuit Court reversed.

In *Lincombe v. State Farm Mut. Automobile Ins. Co.,* 166 So. 2d 920 (La. App. 1964), the named insured had purchased a new car, on which the insurance was issued, but the car was not ready for delivery, and the agency lent the purchaser another car. The use of the lent car was unrestricted, but it was lent for only a brief period, until the new car was ready. The court held there was coverage under the provision of the policy pertaining to the use of a non-owned automobile not furnished for regular use. *Factory Mut. Liability Ins. Co. v. Continental Cas. Co.,* 267 F. 2d 818 (5th Cir. 1959), affirmed the holding of the District Court, on an agreed statement of facts, that the three weeks rental of the motor vehicle in question did not constitute "regular use" within the meaning of the insurance policy involved. See also *American Automobile Ins. Co. v. English,* 266 Ala. 80, 94 So. 2d 397 (1957).

No useful purpose would be served in a detailed consideration of the many other cases collected in the authorities above cited which decided that there was or was not coverage under clauses of insurance policies similar to the provision here involved. On the one hand, the decisions, in the words of Judge Chesnut in *Aler,* look to the "evident intention of the limitation with respect to other automobiles to prevent a situation in which the members of one family or household may have two or more automobiles actually or potentially used interchangeably but with only one particular automobile insured." 92 F. Supp. at 623. On the other hand, the courts generally find coverage where there were restrictions as to the use of the non-owned car, or where, if the use was unrestricted, it was only casual or infrequent. Each case turns on its particular facts.

In the case before us, Floyd and his brother were not members of the same household; they lived in different states. While Floyd's use of the car was unrestricted during the short period for which it was lent to him, the loan was caused by a sudden emergency. Floyd had driven the car only once before, six or seven months before the accident, and then for only one week. The loan was for a limited time and the accident occurred only four days after Floyd had been given the right to use the ve-

hicle. On this combination of circumstances, we agree with the court below that the automobile involved was not "regularly furnished" for the use of the appellee and that there was coverage under the policy.

*Judgment affirmed; costs to be paid by appellant.*