Percy BYRD, Appellant,

v.

ALLSTATE INSURANCE COMPANY, et al., Appellees.

No. 92–CV–320.

District of Columbia Court of Appeals.

Argued Jan. 19, 1993.

Decided April 2, 1993.

David W. Kestner, Marlow Heights, MD, for appellant.

Robert B. Hetherington, Rockville, MD, for appellee.

Before FERREN, FARRELL and KING, Associate Judges.

KING, Associate Judge:

Appellant Percy Byrd appeals from the trial court's grant of summary judgment in favor of appellee Allstate Insurance Company ("Allstate"), under Super.Ct.Civ.R. 56(c). In his complaint, appellant sought recovery from Allstate, appellant's insurer, claiming Allstate wrongfully refused to pay damages for injuries received by appellant while driving his employer's automobile. The injuries were caused by the negligence of Curtis Brown, an uninsured motorist. Finding no genuine issue as to any material fact, we conclude that the trial court properly granted summary judgment in favor of Allstate.

I.

On November 18, 1987, appellant was driving a vehicle owned by his employer, the District of Columbia Department of Corrections, when he was involved in a collision with an automobile driven by Curtis Brown, who was uninsured. Appellant suffered bodily injuries and was unable to work for a period of time. At the time of the accident, appellant was insured with Allstate for his personally owned vehicle. Appellant was a resident of Maryland and the policy was issued in that state. The policy covered appellant for losses caused by uninsured drivers. The policy also provided coverage to appellant when he was driving vehicles not owned by him, but it specifically excluded any non-owned vehicle that was "furnished for the regular use of [the insured] or any resident relative." When Allstate denied coverage, appellant brought this action against Allstate for breach of contract relating to the uninsured motorist coverage, and against Curtis Brown for negligence.

Allstate moved for summary judgment contending that the language excluding vehicles furnished for the insured's regular use was clear and unambiguous. Allstate also maintained that appellant's deposition, in which he testified that the vehicle involved in the collision was not owned by him and was available to him whenever he needed it for his occupational duties, clearly established that the accident in question was excluded from coverage under the policy provision quoted above. Accordingly, Allstate maintained it was entitled to judgment as a matter of law.

Appellant was employed as a counselor with the District of Columbia Department of Corrections, where he worked at a halfway house. In that capacity, he had access to a vehicle owned by the District and kept at the halfway house where appellant worked. According to his deposition testimony, appellant was required to sign-out the vehicle before using it and was not provided with his own set of keys. He was, however, permitted to use the vehicle for any purpose related to his employment. Appellant testified that he used the vehicle

approximately twice a week.[1] In his brief in this court, appellant acknowledges that "he was fairly free to use the vehicle if available for official use."

Appellant's affidavit in opposition to the motion for summary judgment also set forth the nature of appellant's use of and access to the vehicle. In it he swore, *inter alia*, that: (1) his use of the vehicle varied depending on his need; (2) his use was for "certain situations that might come up at the halfway house;" (3) it was impossible to anticipate in advance when he might be using the vehicle, since he used the vehicle, for example, if a resident needed to be transported for medical assistance; and (4) his use was not exclusive, i.e., other employees were also permitted to use the vehicle for official purposes.

## II.

A motion for summary judgment is properly granted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Super.Ct.Civ.R. 56(c).[2] "In reviewing a grant of summary judgment, this court conducts an independent review of the record." *(Katressia) Smith v. Union Labor Life Ins. Co.*, 620 A.2d 265, 267 (D.C.1993) (citations omitted). The standard of review on appeal is identical to the trial court's standard; we will affirm the entry of summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Holland v. Hannan*, 456 A.2d 807, 814 (D.C.1983).

Allstate, as the moving party, has the burden of demonstrating the absence of any genuine issue of material fact, and we must give appellant, the party opposing summary judgment, the benefit of all favorable inferences that can be drawn from the evidence. *Brown v. General Motors Acceptance Corp.*, 490 A.2d 1125, 1126 (D.C.1985); *Holland, supra,* 456 A.2d at 815. Having reviewed the record and the applicable case law, we conclude, as did the trial court, that there is no genuine issue as to any material fact, and that Allstate is entitled to judgment as a matter of law.

Appellant's policy with Allstate provided coverage to him while he was driving a non-owned vehicle *if* the vehicle was not "furnished for the regular use of [appellant] or any resident relative." Allstate argues that based upon the relevant authority, the non-owned vehicle driven by appellant at the time of the accident was furnished for appellant's regular use and, therefore, coverage is excluded under the Allstate policy.

The parties agree that Maryland law controls interpretation of the policy provision. *See supra* note 2. Before reviewing in detail the Maryland authority, we note that the general purpose of a contract provision exempting non-owned vehicles which are furnished for the insured's regular use "is to give coverage to the insured while engaged in the only infrequent or merely casual use of an automobile other than the one described in the policy, but not to cover him against personal liability with respect to his use of another automobile which he frequently uses or has the *opportunity* to do so." *Winterwerp v. Allstate Ins. Co.*, 277 Md. 714, 357 A.2d 350, 353 (1976) (citing *Aler v. Travelers Indem. Co.*, 92 F.Supp. 620, 623 (D.Md. 1950)).

[4–7] We also note that where contract language is not ambiguous, summary judgment is appropriate because "a written contract duly signed and executed speaks for itself and binds the parties without the necessity of extrinsic evidence." *Holland, supra,* 456 A.2d at 815. We need not deem

---

1. In his affidavit supporting his opposition to the motion for summary judgment, appellant stated that "there were times I did not use the vehicle for more than a week."

2. The parties agree that Maryland law applies in determining the substantive issues, namely, the construction of the contract language. The laws of the forum, however, apply to matters of procedure. *Fowler v. A & A Co.*, 262 A.2d 344, 347 (D.C.1970).

a contract ambiguous merely because the parties do not agree on the interpretation of the contract provision in question. *Sacks v. Rothberg*, 569 A.2d 150, 154–55 (D.C.1990) (citations omitted); *Holland, supra*, 456 A.2d at 815. Whether a contract is ambiguous is a question of law which we review *de novo. Sacks, supra*, 569 A.2d at 154 (citing *Dodek v. C.F. 16 Corp.*, 537 A.2d 1086 (D.C.1988)). Maryland courts have addressed contract language nearly identical to that contained in the policy were not ambiguous. *See, e.g., Winterwerp, supra*, 357 A.2d at 352–53 (contract provision containing the terms "furnished or available for the regular use of [ ] the named insured" is not ambiguous); *Allstate Ins. Co. v. Humphrey*, 246 Md. 492, 229 A.2d 70, 72 (1967) (the phrase "not regularly furnished for use" is not ambiguous). Based on that authority, we conclude that the terms of the policy in this case are also not ambiguous and therefore should not be strictly construed against the insurer. *Winterwerp, supra*, 357 A.2d at 352 ("absent an ambiguity, Maryland has not adopted the rule followed in many jurisdictions that an insurance policy is to be most strongly construed against the insurer"); *Humphrey, supra*, 229 A.2d at 72 (citing *Ebert v. Millers Mut. Fire Ins. Co.*, 220 Md. 602, 155 A.2d 484 (1959)).

The first court in Maryland to address this issue was the federal district court which considered an insurance policy that, like the policy in this case, covered non-owned vehicles unless they were "furnished for regular use to the named insured...." *Aler v. Travelers Indem. Co., supra*, 92 F.Supp. at 622. In *Aler*, the insured owned one automobile—the vehicle specified in the insurance policy—and had access to another vehicle owned by his mother-in-law, who had resided with the insured's family for over a year at the time of the accident. Whenever the insured or his family members needed the use of a car they would take whichever car was available and most easily accessible to the street. On the morning of the accident, the insured was driving his mother-in-law's car, since it was the car parked closest to the street in the driveway when he left his home that morning. The court observed that while the insured did not "frequently" use the non-owned vehicle, "he was at liberty to use it when desired." *Id.* at 623. As a result, the court concluded as a matter of law, that the automobile was furnished by the mother-in-law for the regular use of the household members and that the insured was therefore not covered by the policy. *Id.* at 622–23.

The first state court case to consider this issue, *Allstate Ins. Co. v. Humphrey*, 246 Md. 492, 229 A.2d 70 (1967), involved a policy containing language similar to that found in the policy in this case.[3] There, the insured was injured in a collision while driving a vehicle which had been temporarily loaned to him by his brother. The insured advised his brother that he would return the car in two weeks; however, no restrictions were placed on his use of the car during that period. *Id.* 229 A.2d at 72. The Maryland Court of Appeals held "that the period and frequency of the permitted use are elements to be considered in the determination of whether ... there was coverage under the policy." *Id.*, 229 A.2d at 73. The court concluded that because the insured was only entitled to use the vehicle for a short time period, had only used the car one other time six or seven months previously, and the loan of the vehicle was caused by a sudden emergency (i.e., the unexpected breakdown of the insured's own car while visiting his out-of-town brother), the vehicle was not regularly furnished for the use of the insured. *Id.* 229 A.2d at 74. Accordingly, the court concluded that the driver was not excluded from coverage under his policy.

In *Winterwerp v. Allstate Ins. Co., supra*, 357 A.2d at 352, the court considered a policy provision denying coverage to the

---

3. The policy in *Humphrey* excluded coverage for non-owned vehicles which were "regularly furnished for use," *Humphrey, supra*, 229 A.2d at 71, while the contract language in this case denies coverage for non-owned vehicles which are "furnished for regular use." Under the facts presented in the case before us, we conclude that the terms are synonymous, i.e., the vehicle was regularly furnished for appellant's use, as well as furnished for his regular use.

insured while driving a vehicle other than the insured automobile if the automobile being driven was "furnished or available for the regular use of the named insured...." The insured in *Winterwerp* was one of ten to twelve volunteers in a fire department who were certified to drive any of the department's six emergency vehicles. As a result of a collision that occurred while the insured was operating one of the emergency vehicles, another department volunteer, who suffered personal injuries as a result of the accident, sued the insured. In turn, the insured sought coverage for this personal injury claim from his insurance company. Claiming the vehicle being driven by the insured was "furnished or available for [his] regular use," the company denied coverage. *Id.*

The *Winterwerp* court found that the insured did not need permission to drive the vehicles and was actually required to drive one of the vehicles if he was the first volunteer to respond to an emergency call. *Id.* 357 A.2d at 354. The court also concluded that the insured had driven the various vehicles a total of seventy times over a two-year period, and had driven the vehicle involved in the collision only ten times during that same two-year period. Based on these factors, as well as the fact that the insured had volunteered for the department for a number of years and lived only 1.2 miles from the department—which made it likely that he would frequently be the first to arrive when responding to a call—the court found that the vehicles were furnished or available for the insured's regular use.[4] Therefore, any claim against him arising from his operation of one of the emergency vehicles was not covered under his personal insurance policy. *Id.*, 357 A.2d at 355.

Finally, the Maryland Court of Special Appeals had occasion to consider a policy with language identical to that found in appellant's policy. *See Ins. Co. of N. Am. v. Coffman*, 52 Md.App. 732, 451 A.2d 952 (1982). The facts, however, were substantially different from those presented in the

instant case. The insured in *Coffman*, who was employed as a forktruck driver, claimed coverage for injuries that occurred while he was driving the company's van, which was exclusively used to transport sick or injured workers. Another employee was regularly assigned to drive the van; however, when that employee was ill or on vacation, the insured or another of his four co-workers was assigned to drive the van. *Id.* 451 A.2d at 954. During the insured's ten-year tenure with the company, he had driven the van a total of only four times. *Id.*

Relying extensively on *Winterwerp*, *supra*, the *Coffman* court held that in determining whether a given use was "regular," a court could consider: (1) the period and frequency of the permitted use; (2) whether special permission was needed before the vehicle could be driven; and (3) whether driving the vehicle was among the employee's duties. *Id.*, 451 A.2d at 955. The court concluded that the case presented "quite a different picture than that evident in *Winterwerp*," and held that the van was *not* furnished for the insured's regular use. *Id.* 451 A.2d at 956. Accordingly, the court found that his use of the van was covered by the personal insurance policy of the injured driver.

The facts of the case at bar are more like *Winterwerp* than any of the other cases cited. Indeed, we believe that the facts of this case more clearly compel a conclusion that the vehicle in which appellant was injured was furnished for his regular use than was the case in *Winterwerp*. In that case, the insured drove the vehicle in question only ten times during a two-year period, and operated one of the six emergency vehicles seventy times in those two years. Here, appellant used the vehicle approximately twice a week, which would amount to over two hundred uses of the vehicle during a two-year period. Moreover, the court in *Winterwerp* placed reliance on the fact that the insured did not need to seek permission to use the vehicle, and this case presents the exact same circumstances—

---

4. The court noted that the fact that the insured drove the equipment only 70 times out of 2,000 trips over a two-year span was "not decisive." *Winterwerp, supra,* 357 A.2d at 354.

appellant needed only to sign-out the vehicle before using it. Finally, appellant's use of the vehicle was within the scope of his employment, like that of the insured in *Winterwerp.*

Appellant's circumstances are also factually similar to those presented in *Aler, supra,* where, although the non-owned vehicle was not used frequently by him, the insured "was at liberty to use [the vehicle] when desired." *Aler, supra,* 92 F.Supp. at 623. The insured in *Aler* drove the vehicle whenever he needed the use of a car and his mother-in-law's automobile was more accessible to the street than his own car. *Id.* at 622. Similarly, whenever appellant needed a vehicle for an employment-related activity, he could use the car at the halfway house so long as the vehicle was not already being used by another employee. In *Aler,* as in *Winterwerp,* the court concluded that the vehicles in question were furnished for the regular use of the insured, thereby excluding coverage under the provisions of the insurance policies for injuries arising out of accidents which occurred while driving non-owned vehicles. *Id.* at 622–23. Because of the similarity between the instant case and *Winterwerp* and *Aler,* we conclude that Maryland authority requires us to hold that the vehicle driven by appellant in his work-related duties was furnished for his regular use. Thus, any injuries suffered by him due to the negligence of an uninsured driver were not covered by his policy.

The present case is also easily distinguishable from *Coffman, supra,* and *Humphrey, supra,* where the court found that coverage was not excluded while the insured was driving a non-owned vehicle. The insured in *Coffman* was not the employee regularly assigned to drive the vehicle in question, and he had actually driven the vehicle as a substitute driver only four times in a ten-year period. Moreover, the vehicle was used for a limited purpose, i.e., it was used exclusively to transport sick or injured employees when the need arose. *Coffman, supra,* 451 A.2d at 954. The court found that the "manner and frequency" of the insured's use was clearly not that of having been furnished for the employee's regular use. *Id.,* 451 A.2d at 956. In contrast, in the instant case appellant could use the Department of Corrections vehicle for *any* work-related activity, and he drove the car at least twice a week, considerably more frequently than was the case in *Coffman.*

*Humphrey, supra,* is also inapposite. There, the insured was freely permitted to use the vehicle as he desired, but only during the two-week period the car was in his possession. He was not otherwise regularly loaned the car, as evidenced by the fact that he had driven it only once, six or seven months earlier. Here, however, appellant had access to the vehicle during the tenure of his employment, and the car was available for his use at any time when another employee was not using the car.

In sum, both *Coffman* and *Humphrey* allow coverage where the insured's use of the non-owned automobile was "only infrequent or merely casual," while *Aler* and *Winterwerp* deny coverage where the insured was driving a non-owned vehicle which he "frequently uses or has the *opportunity* to do so." *Winterwerp, supra,* 357 A.2d at 353 (citing *Aler, supra,* 92 F.Supp. at 623). We are persuaded that the latter cases control under the circumstances presented in this case and, therefore, we conclude that appellant enjoyed regular use of the vehicle he was driving at the time of his injuries. Thus, we hold that there was no genuine issue as to any material fact, and that Allstate was entitled to judgment as a matter of law. Accordingly, the Superior Court's decision granting Allstate summary judgment under Super.Ct.Civ.R. 56 is hereby

*Affirmed.*