**Paulette DANTLEY, Appellant,**

v.

**HOWARD UNIVERSITY, Appellee.**

**No. 00–CV–1672.**

District of Columbia Court of Appeals.

Submitted May 29, 2002.
Decided June 27, 2002.

---

Paulette Dantley, pro se.

Timothy F. McCormack, and Hope D. Miller were on the brief, Baltimore, MD., for appellee.

Before RUIZ and REID, Associate Judges and PRYOR, Senior Judge.

REID, Associate Judge.

On June 26, 2000, the Superior Court entered summary judgment on appellant Paulette Dantley's breach of contract claim against Howard University. On appeal, she argues that summary judgment in favor of Howard was inappropriate as a matter of law, because her contract with Howard University was broken when she was terminated pursuant to a reduction-in-force. Determining that summary judgment was inappropriate in this case, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

## FACTUAL SUMMARY

From 1988 to 1994, Ms. Dantley was employed as an Admissions Assistant at Howard University. Upon employment, Ms. Dantley received a Howard University Employee Handbook ("Handbook") for non-faculty. The Handbook contained a disclaimer clause declaring that "[t]his document is not to be construed as a contract." Handbook at ii. The Handbook also governed disciplinary proceedings for employees.

In June 1994, Howard University's Board of Trustees decided to restructure the workforce. A Workforce Restructuring Plan was devised with the goal of eliminating 620 positions. On November 9, 1994, the University informed Ms. Dantley that her position was being eliminated.

On November 25, 1997, Ms. Dantley filed a complaint alleging that the Handbook constituted a contract for employment. On July 27, 1999, Howard University moved for summary judgment, arguing that a contract did not exist as a matter of law because the Handbook itself asserted that it is not a contract. On September 10, 1999, the Superior Court denied the motion because there was a "triable issue of fact as to the existence of an implied contract for Plaintiff's continued employment." It relied upon *United States ex rel. Yesudian v. Howard Univ.*, 332 U.S.App. D.C. 56, 153 F.3d 731 (1998), (*"Yesudian"*), where the D.C. Circuit, applying District law, concluded that the Handbook, notwithstanding its disclaimers, could be construed as an implied contract. 332 U.S.App. D.C. at 72–73, 153 F.3d at 747–48. The court thus held that summary judgment was inappropriate. *Id.*

Six days after the Superior Court denied summary judgment in the case before us, we decided *Roberts v. Howard Univ.*, 740 A.2d 16 (D.C.1999). *Roberts* involved an allegation under the same Howard Univer-

sity Handbook that was at issue in *Yesudian, supra*. We upheld the dismissal of the plaintiff's complaint in *Roberts* because he had not exhausted his remedies under the governing collective bargaining agreement. 740 A.2d at 20. In an incidental comment in a footnote, however, we stated:

> Even if the [Howard University H]andbook did apply to Roberts, it did not constitute a contract. Although the issue of whether a personnel manual creates contractual rights is usually a question for the jury, any implied contract rights created by a personnel manual can be disclaimed. The employee handbook clearly states that it is not an employment contract. That ends the matter.

*Id.* at 19, n. 1 (citations omitted).

Armed with *Roberts,* Howard University moved for relief from the order denying summary judgment on June 6, 2000. This time, the trial court agreed, declaring:

> Even though the foregoing quotation is dicta, this court is loathe to ignore the appellate court's declaration or to conclude that it is less authoritative statement of District of Columbia jurisprudence than what was enunciated in the *Yesudian* case. To the contrary, this court concludes that footnote 1 in *Roberts* is the freshest and most significant legal guidance available.

## ANALYSIS

"In reviewing a grant of a summary judgment motion, 'we must assess the record independently ... [and view it] in the light most favorable to the party opposing the motion.'" *Kelley v. Broadmoor Coop. Apartments,* 676 A.2d 453, 456 (D.C.1996) (quoting *Walton v. District of Columbia,* 670 A.2d 1346, 1353 (D.C.1996) (reference omitted)) (alteration in the original). "A motion for summary judgment is properly granted where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Byrd v. Allstate Ins. Co.,* 622 A.2d 691, 693 (D.C.1993) (quoting Super. Ct. Civ. R. 56(c)) (footnote omitted) (alteration in the original).

■ "It has long been settled in the District of Columbia that an employer may discharge an at-will employee at any time and for any reason, or for no reason at all." *Thigpen v. Greenpeace, Inc.,* 657 A.2d 770, 771 (D.C.1995) (citation omitted). Although Ms. Dantley acknowledges that she had no express contract with Howard University, she alleges that she had an implied contract by virtue of language in the Handbook and the Workforce Restructuring Plan.

To support her allegation of an implied contract with Howard, Ms. Dantley relies principally upon *Yesudian.* Applying our decision in *Sisco v. GSA National Capital Fed. Credit Union,* 689 A.2d 52 (D.C.1997), the *Yesudian* court declared:

> The Handbook's statement that "[t]his document is not to be construed as a contract" also fails to meet the *Sisco* standard. Although it states an ultimate conclusion, it does not "contain language clearly reserving the employer's right to terminate at will," which *Sisco* requires to make the promises of the Handbook like this "unenforceable at law." *Sisco,* 689 A.2d at 55....
>
> When taken together with other provisions of the Handbook that clearly limit Howard's right to terminate "to specific causes or events," *Sisco,* 689 A.2d at 55, the disclaimers asserted by Howard do no more than produce the kind of ambiguity that creates a jury question as to whether the Handbook constitutes

"a promise of continued employment to [regular] employees terminable only for cause in accordance with its provisions," *id.* at 56.

332 U.S.App. D.C. at 72, 153 F.3d at 747 (footnotes omitted).

While we are mindful of the *Roberts* footnote, our subsequent ruling in *Strass v. Kaiser Found. Health Plan of Mid–Atlantic,* 744 A.2d 1000, 1013 (D.C.2000), not only is consistent with *Yesudian, supra,* but contains binding authority. *See M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971). In *Strass,*[1] we adopted the proposition that: "Not in every case will a contractual disclaimer clause be adequate to relieve an employer of obligations specified in its regulations." 744 A.2d at 1012 (citing *Greene v. Howard Univ.,* 134 U.S.App. D.C. 81, 88, 412 F.2d 1128, 1135 (1969)). We reversed the trial court, asserting:

> This court has held that a personnel manual that states specific preconditions that must be met before employment will be terminated is sufficiently clear to rebut the presumption of at-will employment. While there is language in Kaiser's policy manual that *it is not a contract,* this qualifier is rationally at odds with other language in the document. Construing the document as a whole, a jury could conclude reasonably that the employer intended to be bound by its terms.... We recognize that *Sisco* allows that an employer, by disclaimer, may negate the reasonableness of the employee's expectation that the employer will be bound. However, that does not answer the question whether the disclaimer in this case, considered with reference to the entire document, effectively relieved Kaiser of any and all obligations which the policies set forth. A jury question was raised as to this issue.

*Strass, supra,* 744 A.2d at 1013–14 (citing *Greene, supra,* 134 U.S.App. D.C. at 87–88, 412 F.2d at 1134–35) (other citation and quotations omitted) (emphasis added).

Thus, under both *Strass* and *Yesudian, supra,* a disclaimer which is "rationally at odds with other language" in the document, here the Howard University Handbook, is not dispositive as to whether an implied contract exists, if when construed "as a whole, a jury could conclude reasonably that the employer intended to be bound by [the] terms [of the Handbook]...." *Strass, supra,* 744 A.2d at 1013–14. Because of its mistaken impression that the footnote in *Roberts, supra,* which is set forth above, controlled the outcome of Ms. Dantley's case, the trial court did not determine: (1) whether the disclaimer in the Howard University Handbook is "rationally at odds with other language" in that document; or (2) whether there are genuine issues of material fact in dispute which would preclude summary judgment in favor of Howard University.

■ With respect to the first issue, our review of the record reveals disagreement between Ms. Dantley and Howard University as to whether termination of Ms. Dantley resulted from an "abolishment of position" under § 1.11(D) or a "reduction in force" under § 1.11(E) of the Howard University Handbook.[2] These sections of

---

1. There, the trial court entered judgment notwithstanding the verdict on a breach of contract claim, determining that no reasonable juror could find an express or implied agreement which superseded a similar disclaimer in a policy manual. *Id.* at 1011.

2. Section 1.11(D) provides that:

> *Abolishment of Position:* A position may be abolished due to budgetary retrenchment, reorganization, or when the best interest of the University will be served. Abolishment of position requires the written approval of the appropriate Executive Level Administrator.

the Handbook, and any other relevant provisions, must be examined to determine whether the disclaimer—that the Handbook "is not to be construed as a contract"—is "rationally at odds with [these provisions or] other language."[3]

In addition, with regard to the second issue concerning the existence of genuine issues of material facts in dispute, Howard University maintains that:

> Even if credence is given to [Ms.] Dantley's assertion that the Employee Handbook is a contract, and further assuming that Section 1.11(E) and not Section 1.11(D) of the Handbook applies to the 1994 workforce restructuring, and that Section 1.11(E) of the Handbook incorporates by reference the Workforce Restructuring Plan, there still was no breach, and the Superior Court properly granted summary judgment.

In contrast, Ms. Dantley asserts that she was not terminated in accordance with the Howard University Handbook or the Workforce Restructuring Plan, and thus, there was a breach of the implied contract.[4] She also claims that she was not an

---

Section 1.11 (E) specifies:

> *Reduction in Force:* When reduction in force is required due to financial exigencies, each Executive Level Administrator will implement the reduction in force procedures that have been approved by the President and certified by the Assistant Vice President for Human Resource Management. The Assistant Vice President for Human Resource Management has the responsibility to assure the implementation of the reduction in force procedures is consistent with the plan approved by the President.

3. The Handbook does not contain an express reservation of the right of the University to terminate employees at will. However, it does include a provision stating that: "[T]he University reserves the right unto itself to maintain exclusive discretion to exercise the customary functions of management including, but not limited to, the discretion to select, hire, promote, demote ... [or] terminate." Handbook § 1.15. In discussing the Handbook's disclaimer—that it is not to be construed as a contract, and the language relating to the University's exclusive discretion, the court in *Yesudian, supra,* applied principles that we articulated in *Sisco, supra:*

> [*Sisco*] holds that promises ... "that are clear enough in limiting the right to terminate to specific causes or events"—effectively *"reverse* the normal presumption: to make them unenforceable at law, a manual purporting to restrict the grounds for termination must contain language *clearly* reserving the employer's right to terminate at will." *Sisco,* 689 A.2d at 55 (emphasis added).
>
> The Handbook's reservation of management rights does not satisfy the *Sisco* standard for rebutting the reverse presumption.... As the district court found here, "the provisions in the handbook relating to termination of employment are phrased in such a manner as to lead an employee to believe that the University does not have unfettered discretion in its termination decisions," despite the reservation of rights clause. *Yesudian,* 946 F.Supp. [31, 35 (D.D.C.1996)].
>
> The Handbook's statement that "[t]his document is not to be construed as a contract" also fails to meet the *Sisco* standard. Although it states an ultimate conclusion, it does not "contain language clearly reserving the employer's right to terminate at will," which *Sisco* requires to make the promises of a Handbook like this "unenforceable at law." *Sisco,* 669 A.2d at 55.

*Yesudian, supra,* 332 U.S.App. D.C. at 71–72, 153 F.3d at 746 (emphasis in orginal).

Ultimately, on remand, the disclaimer language and that relating to the University's "exclusive discretion" must be examined in determining whether section 1.11(D) (abolishment of position) or section 1.15 (reduction in force), applies to Ms. Dantley's situation, and whether the University or Ms. Dantley will prevail in this matter.

4. Howard University submitted an affidavit from its Assistant Vice President for Human Resource Management declaring, in part, that: "The Workforce Restructuring Plan was intended as a guide—it was not required by the Howard University Handbook." The Workforce Restructuring Plan contains specific procedures for accomplishing the restructuring, including the sequence in which positions earmarked for elimination will be

at-will employee since she was hired before July 1999, and one of Howard University's agents issued a March 31, 2000, memorandum, stating that "non-faculty, non-union employees hired before July 1, 1999" are not at-will employees. But the March 31 memorandum also indicates that the at-will policy "does not change" Howard University's "right to abolish jobs for lack of funds, reorganization, restructuring, or 'when the best interest of the University will be served.'" Whether there are genuine issues of material fact relating to these or other arguments articulated by Ms. Dantley and Howard University must be determined in the first instance by the trial court.

Accordingly, for the foregoing reasons, we reverse and remand this case to the trial court for further proceedings consistent with this opinion.

*So ordered.*

selected; the requirement of a written justification for restructuring; and an internal review process pertaining to restructuring actions. The sequence for selection of occupied positions for elimination is: "1) wage requisition positions....[;] 2) Temporary positions[;] 3) Positions occupied by newly hired individuals who have not completed their probationary periods ....[; and] 4) All other occupied positions [which] will be eliminated based on operational needs and without regard to job classification or level." A "Note" under the sequence provision reads:

> Employees who have a current written notice of unsatisfactory work performance and who occupy a position that has been identified for elimination will not be eligible for retention. Positions occupied by special employees (employees who serve at the pleasure of the President) may be eliminated at any time.

Although § 1.11(E) of the Handbook specifies that a reduction in force will be implemented according to "procedures that have been approved by the President and certified by the Assistant Vice President for Human Resource Management[,]" § 1.11(D) only calls for "the written approval of an appropriate Executive Level Administrator."